**Patricia HANSEN, Appellant,**

v.

**Randy RITTER and Randy Snyder, Respondents.**

**No. WD 74115.**

Missouri Court of Appeals, Western District.

June 29, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 31, 2012.

Application for Transfer Denied Sept. 25, 2012.

John E. Turner and Christopher P. Sweeny, Kansas City, MO and J. Kirk Rahm, Warrensburg, MO, for appellant.

Kelly A. Campbell and Lindsay Todd Perkins, Kansas City, MO and Stanley B. Cox, Sedalia, MO, for respondents.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and KENNETH GARRETT, Special Judge.

CYNTHIA L. MARTIN, Judge.

This appeal follows the trial court's dismissal of a wrongful death petition which asserted a common law claim of negligence against two co-employees of a man tragically killed in a workplace accident. The issue on appeal is whether co-employees owe one another a personal duty of care to provide a safe workplace. The trial court concluded that co-employees do not owe a personal duty of care to provide a safe workplace and cannot, therefore, be sued for negligence in acting or failing to act in breach of such a duty. We agree and affirm.

### Factual and Procedural History

The petition dismissed by the trial court alleged[1] that Robert Hursman ("Hursman") was killed on January 22, 2008 in a workplace accident. Hursman was working for Wire Rope Corporation of America, now known as Wire Co World Group, Inc. ("Employer"). Hursman died when a guard gave way as he was leaning over a wire-stranding machine, causing him to become entangled in the moving parts of the machine.

Hursman's mother, Patricia Hansen ("Hansen"), filed a wrongful death action on November 18, 2010, and amended her petition on January 21, 2011 ("Amended

---

1. In this appeal from the grant of a motion to dismiss, we treat the factual allegations in the petition, and all reasonable inferences drawn there from, as true. *Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 713 (Mo.App. W.D.2011).

Petition"). Hansen named Wire Machinery Corporation of America, the manufacturer of the wire-stranding machine, as a defendant. Hansen also named Randy Snyder ("Snyder") and Randy Ritter ("Ritter") as defendants. Snyder was Employer's corporate safety manager. Ritter was Employer's operations manager.

The Amended Petition alleged that Snyder and Ritter each owed the following duties to Hursman: [2]

(a) Each "had a duty and/or undertook to provide [Employer's] employees with a safe working environment, which included making hazardous conditions safe and warning employees of unsafe or hazardous conditions present in [Employer's] facilities." (Count II, paragraph 7; Count III, paragraph 7)

(b) Each "had a duty to detect, correct and prevent work practices and working conditions which would render the plant not reasonably safe for its employees." (Count II, paragraph 7; Count III, paragraph 7)

(c) Each "was an agent of [Employer] who undertook to act for [Employer] under such circumstances that [each] had a duty to take some action for the protection of the person or tangible things of [Employer's] employees and other individuals present in [Employer's] manufacturing facilities." (Count II, paragraph 9; Count III, paragraph 9)

(d) Each "had a duty and/or undertook a duty to work in conjunction with and direct [the other], and other employees of the plant whose duties included the implementation of safety provisions and performance of plant maintenance, to detect and correct dangerous conditions at the plant and to warn plant employees of such dangerous and hazardous conditions." (Count II, paragraph 10; Count III, paragraph 10)

The Petition alleged that Snyder and Ritter were negligent and failed to use reasonable care in breach of these duties in several particulars, each of which involved either a failure to recognize, address, protect Hursman from, or warn Hursman about, alleged deficiencies in the design, use, and/or maintenance of the wire-stranding machine.

Snyder and Ritter filed a motion to dismiss and for judgment on the pleadings seeking dismissal of Counts II and III of the Amended Petition for failure to state a cause of action. Snyder and Ritter alleged that the Amended Petition did not state "facts showing that [Snyder and Ritter] owed [Hursman] a personal duty of care." Alternatively, the motion alleged that Hursman's claims were "barred by the exclusivity provision of the Workers' Compensation Act," challenging the holding in *Robinson v. Hooker*, 323 S.W.3d 418 (Mo. App. W.D.2010), that co-employees are not within the scope of the exclusivity provision of the Act.

On June 7, 2011, the trial court entered an amended judgment ("Judgment") granting the motion to dismiss. The trial court held that "[e]ach duty [Hansen] alleges [Snyder and Ritter] breached [is a] part of the employer's non-delegable duty to make the workplace safe,"[3] and that employees do not owe fellow employees the duty to perform an employer's non-

**2.** Count II of the Amended Petition asserted a claim of negligence against Snyder. Count III asserted a claim of negligence against Ritter. Except for the variances required by name and job title, the allegations in Counts II and III are identical.

**3.** An employer's non-delegable duties, which we discuss in detail *infra*, include the duty to provide a safe workplace.

delegable duties. The trial court thus concluded that the Amended Petition failed to allege that Snyder and Ritter owed Hursman a recognized duty as a matter of law and therefore failed to state a cause of action for negligence against Snyder and Ritter. The Judgment dismissed Counts II and III of the Amended Petition without prejudice.

The trial court did not dismiss the Amended Petition based on the alternative argument that, notwithstanding *Robinson,* Hansen's wrongful death claim was barred by the exclusivity provision of the Workers' Compensation Act ("Act").

The Judgment resolved all claims and issues in dispute as to Snyder and Ritter. The trial court acknowledged that the Judgment disposed of less than all claims as to all parties but expressly found that there was no just reason for delay.[4]

Hansen timely filed this appeal.

## Standard of Review

■ We review a trial court's grant of a motion to dismiss a petition for failure to state a claim *de novo.*[5] *Robinson,* 323 S.W.3d at 421. "In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Stabler v. Stabler,* 326 S.W.3d 561, 564 (Mo.App. E.D.2010) (internal quotation marks omitted). " 'If the

petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim.' " *Id.* (quoting *Lynch v. Lynch,* 260 S.W.3d 834, 836 (Mo. banc 2008)).

No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or a cause that might be adopted in that case.

*State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 329 (Mo. banc 2009) (internal quotation marks omitted). "[A]lthough we treat all of the *factual* allegations in a petition as true, ... 'conclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.' " *Hendricks v. Curators of the Univ. of Mo.,* 308 S.W.3d 740, 747 (Mo.App. W.D.2010) (quoting *Willamette Indus., Inc. v. Clean Water Comm'n,* 34 S.W.3d 197, 200 (Mo.App. W.D.2000)).

## Analysis

Hansen raises a single point on appeal. Hansen argues that the trial court erred in granting Snyder and Ritter's motion to dismiss because they "owe a duty to their co-employees to perform their work in a non-negligent manner, *and* they are not entitled to immunity under the Workers' Compensation Act." (Emphasis added.)

---

4. Rule 74.01(b) permits a trial court to "enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." In this fashion, an interlocutory order becomes a judgment eligible for immediate appellate review.

5. We apply a *de novo* standard of review in this appeal though not for the reason articulated by Hansen. Hansen incorrectly alleges

in her Brief that the trial court dismissed the Amended Petition "based on its finding that [Snyder and Ritter] had immunity under the Workers' Compensation Act" and thus argues that our review of the Judgment is a *de novo* review of the trial court's interpretation of a statute. As previously noted, however, the trial court did not dismiss the Amended Petition based on a finding that Snyder and Ritter are immune from liability under the Act.

The first part of Hansen's Point Relied On mischaracterizes the trial court's Judgment. The trial court did not broadly conclude that co-employees never owe a duty to fellow employees to perform their work in a non-negligent manner. Instead, the trial court narrowly ruled that co-employees do not owe a personal duty to fellow employees to perform the employer's non-delegable duty to provide a safe workplace. We thus limit our *de novo* review on appeal to whether this narrow legal ruling was erroneous.

The second part of Hansen's Point Relied On erroneously raises a second subject in violation of Rule 84.04(d). "A statement of a point relied on ... violates Rule 84.04 when it groups together multiple contentions not related to a single issue." *Biever v. Williams,* 755 S.W.2d 291, 293 (Mo.App. W.D.1988) (citing *Thummel v. King,* 570 S.W.2d 679, 688 (Mo. banc 1978)). We elect to disregard Hansen's violation of Rule 84.04(d), as our analysis in this Opinion need not address the inappropriate second subject of Hansen's Point Relied On.[6]

### The Motion to Dismiss

Snyder and Ritter argued in their motion to dismiss that the Amended Petition did not state facts establishing that Snyder and Ritter owed a personal duty to protect Hursman from injury. In her suggestions in opposition to the motion to dismiss, Hansen acknowledged that an employer has a "non-delegable duty to make the work place [sic] safe" but argued that once Snyder and Ritter undertook their employment, they also undertook to provide a safe workplace. When the motion to dismiss was argued, the trial court inquired of Hansen's counsel: "Duty. What duty does this employee have?" In response, Hansen's counsel summarized the duties alleged in the Amended Petition (and set forth in detail *supra*) as follows: *"Both employees were assigned the duty to provide a safe workplace.... [T]hey were given that duty by their employer. And then ... they assumed the duty by going to work to provide those things, to provide a safe workplace."* (Emphasis added.)

Hansen acknowledged, therefore, that the only duties ascribed to Snyder and Ritter in the Amended Petition are part and parcel of the employer's non-delegable duty to provide a safe workplace. Hansen's characterization is supported by even a cursory review of the duties alleged in the Amended Petition. The trial court thus concluded in its Judgment that "[e]ach duty [Hansen] alleges [Snyder and Ritter] breached [is a] part of the employer's non-delegable duty to make the workplace safe." The trial court then concluded as a matter of law that co-employees do not owe fellow employees a personal duty to perform an employer's non-delegable duty to provide a safe workplace and dismissed the Amended Petition without prejudice.

### The Influence of Robinson v. Hooker on the Trial Court's Legal Ruling

The issue framed by the trial court's legal ruling is a natural by-product of our

---

6. Generally, we are to affirm a trial court's ruling on a motion to dismiss "on any of the meritorious grounds raised in the motion, regardless of whether the trial court relied on that particular ground." *Breeden v. Hueser,* 273 S.W.3d 1, 6 (Mo.App. W.D.2008) (internal quotation marks omitted). Because we conclude that the trial court correctly dismissed the Amended Petition in that it failed to state facts sufficient to establish a legally recognized duty owed by Snyder and Ritter to Hursman, we have no reason to consider any other ground for dismissal raised in the motion. In any event, the alternative ground for dismissal argued by Snyder and Ritter is facially without merit in light of our decision in *Robinson,* which construed the 2005 amendment to the Act.

holding in *Robinson* where we observed that section 287.120.1[7] of the Workers' Compensation Act (the "Act"), the exclusive remedy provision, is expressly limited in its scope to "employers" as that term is statutorily defined. 323 S.W.3d at 424. We strictly construed section 287.030.1, the Act's statutory definition of "employer," and concluded that co-employees generally do not fall within the definition.[8] *Id.* at 424–25. As a result, we concluded that the 2005 Amendment required abrogation of the practice announced in *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo. App. E.D.1982), of affording co-employees immunity under the Act if they are alleged to have breached the employer's duty to provide a safe workplace.[9] *Id.* at 424–25.

 Though *Robinson* abrogated affording immunity under the Act to co-employees alleged to have breached an employer's non-delegable duty, *Robinson* did not comment on the contours of a co-employee's common law liability for the negligent injury of fellow employees in the workplace. To the contrary, *Robinson* observed that section 287.120.2 "implicitly allows an injured employee to pursue civil remedies for claims against parties not covered by the Act." 323 S.W.3d at 424. *Robinson* thus stated the obvious. Section

287.120.2 provides that the Act shall represent the employee's exclusive rights and remedies *"at common law or otherwise,* on account of such accidental injury or death, *except such rights and remedies as are not provided for by this chapter."* (Emphasis added.) Thus, a right or remedy available *"at common law or otherwise"* to an injured person is not affected by the exclusivity provision of the Act unless the right or remedy is being asserted against an employer as that term is statutorily defined. Because strict construction of the statutory definition of "employer" does not include co-employees, the exclusivity provision of the Act does not negate rights or remedies of an injured person against co-employees available "at common law or otherwise." Conversely, the exclusivity provision of the Act does not expand or modify the rights or remedies of an injured person against co-employees beyond those available "at common law or otherwise."

In short, *Robinson* neither created nor defined the rights or remedies of an injured person against co-employees but merely acknowledged that whatever rights and remedies were available "at common law or otherwise" were not barred by the exclusivity provision of the Act.[10] In con-

---

7. All statutory references are to RSMo 2000 as supplemented through the date of this opinion, unless otherwise noted.

8. The 2005 Amendment to the Workers' Compensation Act requires reviewing courts to construe the provisions of the Act "strictly." Section 287.800.

9. As we discuss *infra*, in addition to announcing the judicial construct of immunity to co-employees under the Act, the court in *Badami* coined the "something more" test to determine whether a co-employee's negligent acts remain actionable at common law because they fall outside the duty to perform the employer's non-delegable duties. 630 S.W.2d at 180.

10. *Robinson's* acknowledgment of the continuing right to pursue claims against offending third parties was not novel. In 1931, merely two years after the enactment of the Act, the St. Louis Court of Appeals recognized that the Act "does not serve to take away the employee's common-law right of action against the offending third party." *Sylcox v. Nat'l Lead Co.*, 225 Mo.App. 543, 38 S.W.2d 497, 501 (1931); *see also Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 916 (Mo. banc 1950) ("'The Compensation Act does not take away the employee's common-law right against an offending third person.'" (quoting *Reynolds v. Grain Belt Mills Co.*, 229 Mo.App. 380, 78 S.W.2d 124, 130 (1934))); *Gunnett v. Girardier Bldg. & Realty Co.*, 70 S.W.3d 632, 636 (Mo.App. E.D.2002) ("Work-

trast, this case requires us to explore the rights and remedies of an injured person against co-employees "available at common law."

### Common Law Claims of Negligence against Co-employees

■ Petitions asserting claims of negligence against co-employees arising out of workplace injuries are subject to the pedantic analysis applicable to all claims of negligence—does the petition assert facts which "invoke[ ] principles of substantive law upon which relief can be granted." *Garza v. Valley Crest Landscape Maint., Inc.*, 224 S.W.3d 61, 63 (Mo.App. E.D.2007) (citing *Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 926 (Mo.App. W.D.1995)). "When one brings a common-law negligence action, the plaintiff must 'establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty and, that plaintiff's injury was proximately caused by defendant's failure.' " *Gunnett*, 70 S.W.3d at 637 (quoting *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990)). "So too when an injured worker seeks to bring a negligence action against his co-employee." *Id.*

■ "Thus, as in other common-law actions, the threshold matter is to establish the existence of a duty owed by the co-employee." *Id.* "[I]t is not simply the existence of a duty on the part of the co-employee, but the nature of the duty involved which is key in determining whether the co-employee may be held liable." *Id.* "Duty is unique among the elements of negligence because the existence of duty is a question of law to be decided by the court." *Miles ex rel. Miles v. Rich*, 347 S.W.3d 477, 483 (Mo.App. E.D.2011) (internal quotation marks omitted).

Here, the duties Hansen ascribes to Snyder and Ritter are subsumed within the employer's non-delegable duty to provide a safe workplace. We need not determine, therefore, the precise contours of the common law duty co-employees owe to one another in the workplace. Instead, we need only determine whether a duty to perform the employer's non-delegable duty is included within those contours.

### The Employer's Non-Delegable Duties

■ It is well settled that "[t]he law imposes upon the master certain duties regarding the safety of his servants, which he may delegate to another, but by doing so he is in no wise discharged from the responsibility of their proper performance." *Edge v. Sw. Mo. Elec. Ry. Co.*, 206 Mo. 471, 104 S.W. 90, 97 (1907).

> An employer's responsibility at common law was to discharge five specific duties relevant to safety: (1) to provide a safe workplace; (2) to provide safe equipment in the workplace; (3) to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware; (4) to provide a sufficient number of competent fellow employees; and (5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety.

*Gunnett*, 70 S.W.3d at 638 n. 8; *see also Kelso v. W.A. Ross Constr. Co.*, 337 Mo. 202, 85 S.W.2d 527, 534 (1935) (" 'The more specific duties which arise from the general duty of an employer to use reasonable care are: To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used.' " (quoting *Schaum v. Sw. Bell Tel. Co.*, 336 Mo. 228, 78 S.W.2d 439, 442

---

ers' compensation laws are not meant to be a substitute for common-law actions for wrongs

or people not comprehended within the law.").

(1934))). "Providing a safe place to work is just one of the non-delegable duties an employer owes its employees—a duty which the employer may not escape by delegating the task to someone else." *Gunnett,* 70 S.W.3d at 638.

At common law, a servant to whom performance of the master's non-delegable duties was delegated was treated as the functional equivalent of the master.

> A servant intrusted with the performance of the master's personal duties is, in regard to those duties, a vice principal or representative of the master, and his acts as such, whether of omission or commission, are the acts of the principal; and, if negligently performed, the principal is liable for all injuries that may naturally flow therefrom, and he must answer in damages to the injured servant the same as if he had committed the act in person.

*Edge,* 104 S.W. at 97; *see also Mitchell v. Polar Ice & Fuel Co.,* 206 Mo.App. 271, 227 S.W. 266, 269 (1921) ("It makes no difference at what point in the scale of employment a master goes to find a servant to perform for him a particular duty to other servants, for, when the master selects that servant to act for him in the performance of that duty, then such servant becomes the master's alter ego as to that particular duty."); *Bender v. Kroger Grocery & Baking Co.,* 310 Mo. 488, 276 S.W. 405, 408 (1925) ("[T]o the extent of the discharge of [employer's non-delegable duties] by the middle man [employee], [the employee] stands in the place of the master, but as to all other matters he is a mere servant.").

Thus, at common law, the negligence of an employee in performing an employer's non-delegable duties did not affect an injured employee's right to seek recovery from the employer. In *Bender,* an injured employee sued his employer for "failing to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work." 276 S.W. at 405. The Supreme Court discussed whether the negligence of another employee in causing the injury could be charged to the employer. *Id.* In addressing the question, the Court observed:

> The duty of the master to exercise ordinary care to furnish his servant a reasonably safe place in which to work is one of the duties owing by the master to his servant, *which cannot be delegated* to a fellow servant so as to relieve the master from liability for the negligent performance by such servant of an act constituting part of such duty of the master.

*Id.* at 406 (emphasis added). The Court then examined the act ·of the negligent employee to determine whether it "was an act affecting the safety of the place where plaintiff was directed to work." *Id.* The Court concluded that the negligent employee's act "affected the security of the place wherein plaintiff was instructed to work, in a negligent manner. For that negligence [employer] was liable, regardless whether or not [the negligent employee] was ordinarily a fellow servant[11] of the

---

11. "Fellow servants" are servants "engaged in a common employment, that is, work of the same general character or such as to bring them into necessary and frequent contact." *Daniels v. Banning,* 329 S.W.2d 647, 651 (Mo. 1959) (quotation omitted). Fellow servants do not include "vice-principals," those to whom a "master gives ... [the] power to superintend, control and direct the men engaged in the performance of work." *Thomas v. Am. Sash & Door Co.,* 321 Mo. 1024, 14 S.W.2d 1, 3 (Mo. banc 1928). Fellow servants also do not include employees "employed in separate and distinct departments," or who, though engaged in the same task at the time of an injury, are not "so associated in their work that each could observe and influence the other's conduct and report any

plaintiff." *Id.* at 408. Significantly, the Court endorsed the following principle:

> The [employer is] liable for the negligent performance of any act directed by it to be performed by any employee, whether of high or the most lowly degree, which affected the safety of [the place of work]. The duty of exercising ordinary care to keep such place reasonably safe [is] a continuing and nondelegable duty. For the negligent act of the employee, to whom such act was assigned, the defendant [employer] is liable.

*Id.*

### Co-employee Liability for Injuries to Fellow Employees

Though an employer remains liable to an injured employee for breach of the employer's non-delegable duties, even where the negligence of a co-employee is the cause of the breach, the pressing question is whether the negligent co-employee is also liable. At early common law, the answer to this question was no. The "non-delegable duties are duties of the employer to his employees *and not of fellow servants to each other.*" *Kelso,* 85 S.W.2d at 534 (emphasis added). The practical rationale for refusing to impose on co-employees a legal duty *to fellow employees* to perform an employer's non-delegable duties was grounded in the recognition that said duties "often concern matters beyond the control of individual employees." *Id.*

Though employees owed no duty to fellow employees to perform an employer's non-delegable duties, there were circumstances which would give rise to a co-employee's liability for negligence. At the beginning of the twentieth century, the conduct of co-employees was divided into two categories—nonfeasance (the failure to perform a duty) and misfeasance (the negligent performance of a duty). *See, e.g.,* *McGinnis v. Chicago Rock Island & Pac. Ry. Co.,* 200 Mo. 347, 98 S.W. 590, 592 (1906); *Jewell v. Kansas City Bolt & Nut Co.,* 231 Mo. 176, 132 S.W. 703, 711 (1910). The distinction defined the boundary of co-employee liability to fellow employees.

> There are two classes of cases ... one wherein the master is held liable for the nonfeasance or negligent failure of the servant to perform a duty, and the other where the master is held liable for the misfeasance, or negligent performance of a duty. In the one case the servant simply negligently fails to do what should have been done, and in the other,

delinquency to a correcting power, or head." *Daniels,* 329 S.W.2d at 651. Under the common law, the fellow servant rule was an affirmative defense available to the employer in an action by an injured servant and was "an exception to the general rule [of respondeat superior] that a master is responsible for injury caused to a third person by any negligence or misconduct of his servants while acting within the scope of their employment." *Parker v. Nelson Grain & Milling Co.,* 330 Mo. 95, 48 S.W.2d 906, 908–09 (1932). However, the fellow servant rule was not available as an affirmative defense to an employer when the fellow servant's "negligence was a breach of the master's non-delegable duty to keep plaintiff's place of work reasonably safe." *Thomas,* 14 S.W.2d at 4; *see also Graczak v. City of St.*

*Louis,* 356 Mo. 536, 202 S.W.2d 775, 777 (1947). The Act originally provided that "the defenses of negligence of a fellow servant, contributory negligence of the plaintiff, and the risks assumed by the employee 'shall be allowed to an employer who has elected to accept this chapter, if the employee has elected to reject it.'" *Frazier v. Ford Motor Co.,* 365 Mo. 62, 276 S.W.2d 95, 98 (Mo. banc 1955) (quoting section 287.080, RSMo 1949). This provision of the Act was repealed in 1978, however. H.B. 1260, 79th Leg., 2d Reg. Sess. (Mo.1978). That, along with the amendment of section 287.120.1 in the same year to eliminate the ability of employers and employees to elect coverage under the Act, effectively nullified the future legal relevance of the fellow servant rule.

he negligently does what should have been done and properly done. *In the first class of cases the servant is not liable to third parties,* but the master under the rule of respondeat superior is liable. *In the second class of cases both are liable to third parties;* the servant because he actually does the wrongful act occasioning the injury, the master because under the rule of respondeat superior, he is liable for the negligent act of the agent done within the scope of his employment, and in the course and performance of his master's business.[12]

*McGinnis,* 98 S.W. at 592 (emphasis added); *see also Jewell,* 132 S.W. at 711 ("[T]he law is well settled in this state that the foreman is not liable in damages for personal injuries sustained by a servant of the master in consequence of the foreman's nonfeasance or mere neglect of duty.").

Nonfeasance, or the failure to perform a duty, " 'refer[ed] to the omission on the part of the agent to perform a duty *which he owes to the principal by virtue of the relationship existing between them.*' " *McCarver v. St. Joseph Lead Co.,* 216 Mo. App. 370, 268 S.W. 687, 690 (1925) (quoting 7 Labatt's Master and Servant 7974) (emphasis added). The duties owed by an agent to a principal included the duty to perform the principal's non-delegable duties. *See Badami,* 630 S.W.2d at 177 (observing that at common law, nonfeasance results in agent's liability only to his principal); *Stanislaus v. Parmalee Indus., Inc.,* 729 S.W.2d 543, 546 (Mo.App. W.D. 1987) (holding duties alleged in petition were "all acts of omission of duties owed" by co-employee to his employer).

In contrast, " 'whenever the omission on the part of the agent consists of his failure to perform a duty which he *owes to third persons,* then, as to such third persons, his omission amounts to misfeasance for which he is responsible.' " *McCarver,* 268 S.W. at 690 (quoting 7 Labatt's Master and Servant 7974) (emphasis added). Thus, at early common law, there was a recognized "distinction between a breach of the employer's duty to provide a safe workplace," which could not result in a co-employee's liability to an injured co-worker, "and a breach of a personal duty of care," which could result in a co-employee's liability to an injured co-worker. *Gunnett,* 70 S.W.3d at 639 (citing *Tauchert v. Boatmen's Nat'l Bank of St. Louis,* 849 S.W.2d 573, 574 (Mo. banc 1993)).

The distinction between nonfeasance and misfeasance as the means of defining co-employee liability continued after the Act was adopted in 1929.[13] In *Sylcox,* the court observed that the Act's exclusivity provision applies "only to rights and remedies theretofore existing in favor of the employee against his employer, and does not serve to take away the employee's common-law right of action against the offending third party." 38 S.W.2d at 501. Specifically, the court held:

[T]he whole scope and purpose of the act is to fix and determine the rights and liabilities as between employer and employee; *the liability of one at common law is left unaffected by the act, except in so far as it has been expressly taken away by it;* and where one has, and can have no liability under the act, he is likewise in no position to claim any immunities under it.

---

12. *But see* the discussion of the now largely irrelevant "fellow servant rule" in the preceding footnote which (prior to 1978) provided a master with an affirmative defense affording an exception to the master's liability in the second class of cases.

13. Section 3320 through section 3376, RSMo 1929.

*Id.* (emphasis added). The court concluded that co-employees are "third parties" within the meaning of the Act and remain exposed to suit in so far as otherwise available at common law.[14] *Id.* In describing the "common-law right" to pursue a co-employee, the court restated the boundaries of liability along the nonfeasance/misfeasance line.

> [T]here is no doubt that at common law one servant is liable to another for his own *misfeasance,* and there is nothing in the Compensation Act which destroys such liability, or in any way disturbs the common law relationship between coemployees.... The right of the injured employee to sue the third person depends upon whether the latter is subject to the act. Since the coemployee whose misfeasance produces the injury is not subject to the act, he must be regarded as a "third party," and therefore amenable to an action at common law.

*Id.* at 502. Thus, the adoption of the Act in 1929 had no impact on the common law as it related to an injured employee's right to sue a negligent co-employee for misfeasance (negligent performance of a duty) but not for nonfeasance (negligent failure to perform a duty, including the employer's non-delegable duties).

Over time, Missouri courts began to question determining co-employee liability based on whether a co-employee's conduct constituted misfeasance or nonfeasance. In *Lambert v. Jones,* our Supreme Court concluded the dichotomy was "a fictitious distinction, which can only result in confusion," as acts of omission or commission could fall into either category. 339 Mo. 677, 98 S.W.2d 752, 757 (1936). Our Supreme Court instead determined to focus in the first instance on whether a co-employee owed an injured third party a legal duty of care. *Id.* The Supreme Court held:

> It would seem, however, that the test, which would be most reasonable, which would really eliminate the confusion resulting from attempting to classify various acts or omissions of agents or employees as misfeasance or nonfeasance, and by which all situations could be more clearly and correctly solved, would be the rule that *a servant* or agent *is liable for acts or omissions causing injury to third persons whenever,* under the circumstances, *he owes a duty of care in regard to such matters to such third persons.*

*Id.* at 759 (emphasis added).

To determine *when* a duty of care is owed by an agent or servant to third persons (including co-employees), the Court articulated the following test:

> In short, [an agent or servant] would be liable whenever he is guilty of such negligence as would create a liability to another person *if no relation of master and servant or principal and agent existed between him and someone else.*

*Id.* (emphasis added). This test was reiterated in *Ryan v. Standard Oil Co. of Indiana,* 144 S.W.2d 170 (Mo.App.1940). Following discussion of *Lambert,* the court held that:

> In other words, the liability of the servant or agent does not result on account of the existence of the relation of master and servant, or principal and agent, but results from the breach of a duty owed to the third party under the law, which makes him liable *without regard to*

---

14. This same result was reached by our Supreme Court in *Schumacher,* 232 S.W.2d at 917–18 (holding that a co-employee (whether fellow servant or foreman) is a "third person" within the meaning of the Act, and that the exclusion clause in the Act does not therefore operate to "abrogate[ ]" the employee's common law rights against" co-employees).

*whether he is the servant or agent of another or not.*

*Id.* at 173 (emphasis added).

 *Lambert's* shifted emphasis to determining whether a legal duty exists independent of a master-servant relationship as a means of demarcating liability to injured third parties did not modify the common law with respect to workplace injuries. Co-employees do not independently owe a duty to fellow employees to perform the employer's non-delegable duties. If co-employees are assigned to perform the employer's non-delegable duties, it is solely by virtue of the master-servant relationship. Stated differently, a co-employee has no duty to perform the employer's non-delegable duties independent of the master-servant relationship. Thus, the employer's non-delegable duties are not duties owed by co-employees to fellow employees "under the law" as to subject a co-employee to liability *"without regard to whether he is the servant . . . of another or not." Id.* (emphasis added).

Though a premises liability case, and not a workplace injury case, our Supreme Court's discussion in *Devine v. Kroger Grocery & Baking Co.,* 349 Mo. 621, 162 S.W.2d 813 (1942) is consistent with this conclusion, by analogy. In *Devine,* an employer appealed a jury verdict finding it negligent, and thus responsible, for injuries to a customer who fell in a hole. *Id.* at 815. The employer claimed the verdict was inconsistent with the jury's verdict finding that the employee/manager of the store was not negligent because, under the doctrine of respondeat superior, the principal cannot be liable if the agent is not. *Id.* One of the alleged duties submitted to the jury was the duty to maintain a "reasonably safe place in which to do business." *Id.* at 815–16. This duty, which is indistinguishable from an employer's non-delegable duty to maintain a safe workplace, was

similarly observed to be a "duty which an owner or occupant of property is under . . . [which] *cannot be delegated by him* as to avoid personal responsibility." *Id.* at 818 (emphasis added). The Court addressed the distinction between the non-delegable duties owed by a principal and the personal duties owed by an agent and concluded that the jury verdict was not inconsistent. The Court's analysis is instructive:

> [T]he pleadings, the instructions and the evidence show *each defendant to have been under a different and separate legal duty* or obligation to the plaintiff and the liability or non-liability of each of them to her dependent on a different legal theory; *Kroger because it is the owner* and possessor and *did or did not* (as the jury might find) *violate its duty as a storekeeper* [to keep the premises in a reasonably safe condition] *and [employee/manager] because he was or was not guilty (as the jury might find) of certain acts of specific negligence* with respect to the plaintiff.

*Id.* (emphasis added). Our Supreme Court thus differentiated between the non-delegable duties owed by a principal to maintain safe premises and the separate duties which may be owed by an agent because of certain acts of specific negligence. By necessary implication, the agent's "certain acts of specific negligence" derived from a duty owed independent of the non-delegable duties of the principal.

 In light of the foregoing discussion, we conclude that at common law, a co-employee who has violated an *independent* duty to an injured employee will be "answerable to such person for the consequences of his negligence, and he may not escape liability on the supposed differences in nonfeasance, misfeasance and malfeasance." *Giles v. Moundridge Milling Co.,* 351 Mo. 568, 173 S.W.2d 745, 751 (1943)

(citing *Devine*, 349 Mo. 621, 162 S.W.2d 813; *Lambert*, 339 Mo. 677, 98 S.W.2d 752) (other internal citations omitted). However, a co-employee's independent duties owed to fellow employees do not include the duty to perform the employer's non-delegable duties, as those duties necessarily derive from, and are not independent of, the master-servant relationship.

### The Continued Efficacy of the "Something More" Test

It was in the wake of the *Lambert* progeny of cases that the "something more" test was announced in *Badami*. The Court in *Badami* acknowledged that "a co-employee, or fellow servant or foreman, is a 'third person' within the meaning of Sec. 287.150 and that he may be sued by an injured co-employee for his negligence resulting in compensable injury." 630 S.W.2d at 177. The Court in *Badami* also acknowledged, however, the common law principle that "[a]n employee chosen to implement [the employer's duty to provide a safe place to work] owed his duty to the employer *and he incurred no personal liability for failure to fulfill his duty to provide a reasonably safe place for employees to work.*" *Id.* at 178 (emphasis added). In fact, *Badami* held that "[c]harging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty *charges no actionable negligence.*" *Id.* at 180 (emphasis added).

Instead of leaving to each case the determination of whether a personal duty independent of the employer's non-delegable duties had been pled sufficient to support a claim for actionable negligence, the court in *Badami* elected to interpret the Act's definition of "employer" to include employees performing the employer's non-delegable duties. As a result, by judicial construct, *Badami* afforded employees performing the employer's non-delegable duties immunity by virtue of the effect of the Act's exclusivity provision. *Id.* at 177–180. The *Badami* court then held that for an injured employee to charge a co-employee with actionable negligence, "something more" than breach of one of the employer's non-delegable duties must be pled. *Id.* at 180. The court observed that "[t]he extent and nature of the additional charge can only be determined and sorted out on a case-by-case basis." *Id.* at 180–81.

Of course, the same "case-by-case" determination was already required to differentiate between allegations asserting an independent personal duty and allegations asserting nothing more than the duty to perform an employer's non-delegable duties. Thus, the "something more" test added nothing to the common law, which already excluded the performance of an employer's non-delegable duties from the ambit of personal duties independently owed by co-employees to other employees. One wonders, therefore, the motivation for creating the "fiction" of immunity when co-employees performing an employer's non-delegable duties were already shielded from personal liability at common law, as an essential element of an actionable negligence claim—duty—could not be established.

The explanation lies in the *Badami* court's misapprehension of the effect of "elimination of the distinction [between nonfeasance and misfeasance by the *Lambert* line of cases] developed in agency and tort law independent of our compensation legislation." *Id.* at 178. The court in *Badami* believed it was required to determine "whether we should fix our compensation legislation with this independently developed conceptual change." *Id.* The court then judicially constructed the Act to

afford co-employee immunity, fearful that if it did not do so, the shift away from the nonfeasance/misfeasance distinction could lead to exposing co-employees to liability for breach of an employer's non-delegable duties, as demonstrated by the stated rationale for its decision:

> Under present day industrial operations, to impose upon executive officers or supervisory personnel liability for an accident arising from a condition at a place of employment which a jury may find to be unsafe would almost mandate that the employer provide indemnity to such employees. That would effectively destroy the immunity provisions of the [Act].

*Id.* at 180.

*Badami*'s judicial construct of the Act to protect employers from the obligation to indemnify co-employees who negligently perform an employer's non-delegable duties was an unnecessary exercise. As the court in *Badami* noted, the *Lambert* line of cases eliminated the distinction of nonfeasance/misfeasance "in agency and *tort* law." *Id.* at 178 (emphasis added). The *Badami* court neglected to appreciate, however, that although *Lambert* shifted the focus to whether a personal duty was owed by an agent or servant to an injured third party, it required the personal duty to exist *independent of the master-servant or principal-agent relationship. Lambert,* 98 S.W.2d at 759; *see also Ryan,* 144 S.W.2d at 173; *Devine,* 162 S.W.2d at 818. Because a co-employee does not owe fellow employees the duty to perform an employer's non-delegable duties independent of the master-servant relationship, said duties are not personal duties of the co-employee and cannot support an actionable claim of negligence. It was unnecessary, therefore, for the *Badami* court to decide whether to "fix our compensation legislation with [*Lambert*'s ] independently

developed conceptual change," 630 S.W.2d at 178; *see Sylcox,* 38 S.W.2d at 501 ("[T]he liability of one at common law is left unaffected by the act, except in so far as it has been expressly taken away by it. . . .").

*Gunnett* recognized that *Badami*'s "something more" test did nothing more than restate the pre-existing common law with respect to co-employee liability to fellow workers for breach of the employer's non-delegable duties.

> [C]onstruing 'something more' as a breach of a personal duty of care that the co-employee owes to the injured worker also comports with the foundational principle of common-law negligence actions—that there must exist some duty on defendant's part owing to the plaintiff, the observance of which would have avoided the injury. Thus, the court in *Badami* was correct— whether a co-employee may be held liable will depend on the facts and circumstances of each case.

70 S.W.3d at 639. Importantly, *Gunnett* concluded:

> [S]ummarizing, *a co-employee cannot be held personally liable for his negligence in carrying out the employer's non-delegable duties,* whether it be the employer's duty to provide its employees with a reasonably safe place to work, or any other non-delegable duty. *To maintain an action against the co-employee, the injured worker must demonstrate circumstances showing a personal duty of care owed by defendant to the injured worker, separate and apart from the employer's non-delegable duties* . . . .

*Id.* at 641 (emphasis added). This statement resonates of the standard set out in *Lambert* and its progeny, requiring a servant or agent to owe a personal duty of care to a third party independent of the master-

servant or principal-agent relationship to support an actionable claim of negligence.

We recognize, of course, that this court in *Robinson* abrogated *Badami*'s judicial construct of the Act and thus eliminated immunity for a co-employee who fails to perform one of the employer's non-delegable duties.[15] 323 S.W.3d at 424–25. However, *Badami*'s recognition of the underlying (and long standing) common law principle that a co-employee owes no duty to fellow employees to perform an employer's non-delegable duties remains good law. In fact, as we observed in *Stanislaus*:

> It seems clear that the *Badami* court retained the misfeasance-nonfeasance concepts of co-employee cases announced in prior cases. It unequivocably held that a co-employee's failure to perform a duty delegated to him by his employer (an omission of duty) does not give rise to a cause of action by a fellow employee injured by reason of that omission. ***It did not place the decision exclusively on an immunity granted to the co-employee by the [Act].***

729 S.W.2d at 545 (emphasis added).

Thus, as *Badami* drew the line for immunity under the Act co-extensively with the line establishing common law liability for co-employees, the cases since *Badami* which have refined the "something more" test remain instructive in defining a co-employee's personal duties to fellow employees, albeit in the context of a common law negligence claim. *See, e.g., State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622 (Mo. banc 2002) (requiring "purposeful, affirmatively dangerous conduct" to move a

fellow employee outside the scope of an employer's responsibility to provide a safe workplace), *overruled on other grounds by McCracken v. Wal–Mart Stores East, LP*, 298 S.W.3d 473 (Mo. banc 2009); *Gunnett*, 70 S.W.3d at 641 (holding that a "personal duty will arise out of circumstances where the co-employee engages in an affirmative act, outside the scope of employer's non-delegable duties, directed at a worker, increasing the risk of injury"); *Tauchert*, 849 S.W.2d at 574 (holding that "creation of a hazardous condition is not merely a breach of an employer's duty to provide a safe place to work" but an "affirmative negligent act outside the scope of . . . responsibility to provide a safe workplace"); *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993) (holding that "an employee may sue a fellow employee for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace").[16] In fact, "post-*Badami*" cases addressing the "something more" test are indistinguishable for all intents and purposes from "pre-*Badami*" cases which described the line between liability and no liability for co-employees. *See, e.g., Kelso*, 85 S.W.2d at 536 ("In other words, the rule that the master is bound to see that the environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees." (emphasis omitted)).

■■■ As we initially noted in this Opinion, however, it is unnecessary in de-

---

15. In doing so, as we have already observed, *Robinson* simply reaffirmed the holdings years earlier in *Sylcox*, 38 S.W.2d at 501, and *Schumacher*, 232 S.W.2d at 917–18.

16. *See also Workman v. Vader*, 854 S.W.2d 560 (Mo.App. S.D.1993); *Davis v. Henry*, 936 S.W.2d 862 (Mo.App. E.D.1997); *Quinn v. Clayton Constr. Co.*, 111 S.W.3d 428 (Mo.App. E.D.2003); *Risher v. Golden*, 182 S.W.3d 583 (Mo.App. E.D.2005); *Arnwine v. Trebel*, 195 S.W.3d 467 (Mo.App. W.D.2006); *Garza*, 224 S.W.3d 61.

ciding the matter before us to definitively determine the precise parameters of a co-employee's personal duties to a fellow employee sufficient to support an actionable claim of negligence.[17] We need only conclude, as we do, that under common law, a co-employee's personal duties to fellow employees do not include a legal duty to perform the employer's non-delegable duties. Unless a petition asserts a personal duty owed by a co-employee that exists independent of the employer's non-delegable duties, and thus a duty that would exist independent of the master-servant relationship, the petition will not survive a motion to dismiss for failure to state a cause of action for negligence.

Hansen disagrees. Hansen argues that a co-employee's duty to fellow employees is broad enough to include performance of the employer's non-delegable duties, relying heavily on *Logsdon v. Duncan*, 293 S.W.2d 944 (Mo.1956). In *Logsdon*, the Supreme Court held:

This is an action by an employee against two of his fellow employees for their personal negligence and breach of duty to him. And while the instance is rather infrequent, it is nevertheless governed by the most elemental principles of tort liability. *For their mutual safety all employees are necessarily dependent upon the care they exercise with respect to one another and by reason of their relationship each employee owes to his fellow workman the duty to "exercise such care in the prosecution of their work as men of ordinary prudence use in like circumstances, and he who fails in that respect is respon-*

*sible for the resulting physical injury to his fellow servant."*

*Id.* at 949 (quoting 35 Am.Jur. *Master and Servant* sections 526, 527 (1941)) (emphasis added). Hansen argues that the emphasized language requires the conclusion that a co-employee owes a legal duty to fellow employees that includes the duty to perform the employer's non-delegable duties.

We disagree for several reasons. First, the emphasized language is preceded by the statement that co-employee liability to fellow employees is an infrequent instance, an observation inconsistent with affording *Logsdon* the broad reading attributed by Hansen. Second, the emphasized language is followed by this statement:

And certainly it requires no analysis to demonstrate that the dislodging of a brick from behind a chimney on a two-story house so that it falls and strikes an unsuspecting fellow workman on the head is not the prudent exercise of due care....

*Id.* The facts in *Logsdon* were consistent with a traditional misfeasance case, (or in *Badami* parlance, a "something more" case) and thus a case involving an independent act by an employee that increased the risk of injury to a fellow employee and did not implicate the employer's duty to maintain a safe workplace. Third, the treatise from which the emphasized language is quoted follows with this caveat:

Of course, an employee may not be held liable for injury to a co-employee unless the defendant is shown to have been responsible for the injurious occurrence. *In no case should the employee be held*

17. In fact, the parameters of a co-employee's common law duties to fellow employees for workplace injuries may be influenced by a 2012 amendment to section 287.120.1 of the Act. The amendment legislatively affords immunity to co-employees unless a fellow employee is injured as a result of the co-em-

ployee's "affirmative negligent act that purposefully and dangerously caused or increased the risk of injury." H.B. 1540, 96th Gen. Assem., 2d Reg. Sess. (Mo.2012). If not vetoed by the Governor, the amendment will take effect on August 28, 2012.

*liable for injuries resulting from acts done under direction of the employer or his representative* and involving no judgment or discretion on the part of the actor; and according to some courts, the act must consist in positive misfeasance.

35 Am.Jur. *Master and Servant* section 527 (citing *Jewell,* 231 Mo. 176, 132 S.W. 703) (emphasis added). We conclude, therefore, that *Logsdon* cannot be read to sweep a specific duty to perform an employer's non-delegable duties into the general duty an employee owes fellow employees to exercise reasonable care in the performance of the employee's work.

This conclusion is reinforced by the Supreme Court's decision in *Marshall v. Kansas City,* 296 S.W.2d 1 (Mo.1956), decided two months after *Logsdon,* and written by the same author.[18] In *Marshall,* the Court reiterated that an "employer ... owes to its employees the non-delegable duty to furnish safe tools and appliances and a reasonably safe place to work and failing in these respects is subject to liability for injury resulting to its employees." *Id.* at 3. The Court distinguished between cases where injury results "from a hazardous condition and an unsafe place to work due to the method or manner in which the work is being done," from cases where "the place of work was not unsafe and the hazard was *not* brought about by the manner in which the work was being done" but instead by reason of the manner in which a co-employee handled an otherwise safe piece of equipment. *Id.* (emphasis added). The Court concluded that the injured employee was injured *by the independent negligent act of the fellow employee,*

"and not by reason of the breach of any non-delegable duty owed by the [employer]." *Id.* (emphasis added). The Court thus permitted personal liability to attach to the negligent employee. *Id.*

Hansen also asserts that the generally stated principles in the RESTATEMENT (SECOND) OF TORTS section 324A (1965) and the RESTATEMENT (SECOND) OF AGENCY section 354 (1958) require the conclusion that one who undertakes to render a service, or to act for a principal, does so subject to liability to third persons for injuries resulting from a failure to exercise reasonable care, or from an unreasonable risk of harm created by a failure to act for the principal. In advancing this argument, Hansen improvidently presupposes that *Robinson* effectively overruled *Badami* in all respects and vitiated the efficacy of every case both pre-*Badami* and post-*Badami* addressing the extent to which co-employees owe a personal duty of care to fellow employees. We have already addressed the error in such a supposition. In any event, neither of the Restatement provisions relied upon by Hansen address the non-delegable duties of the employer. More to the point, no Missouri case has ever relied on either provision to declare that a co-employee owes fellow employees the personal duty to perform an employer's non-delegable duties. In fact, as we have observed, the opposite is true. As first clearly stated in *Kelso* nearly eighty years ago, co-employees do not owe fellow employees the legal duty to perform the employer's non-delegable duties. Since then, no Missouri case has ever imposed liability on a co-employee for negligent performance of an employer's non-delegable duties.[19]

18. The author of *Logsdon* and *Marshall* was Commissioner C. Barrett. In both cases, the opinion of Commissioner Barrett was adopted as the opinion of the Court. *Logsdon,* 293 S.W.2d at 951; *Marshall,* 296 S.W.2d at 3.

19. Hansen argues that *McCarver* held a co-employee liable for breach of an employer's non-delegable duties. We disagree. After describing nonfeasance to exclude a servant's agreement to perform duties he owes to the

The duties ascribed to Snyder and Ritter in the Amended Petition were part and parcel of the Employer's non-delegable duty to provide a safe workplace. The duties were, as conceded by Hansen, duties delegated to Snyder and Ritter by Employer, and assumed or undertaken by Snyder and Ritter merely "by going to work." The Amended Petition does not assert that Snyder and Ritter owed personal duties to Hursman independent of Employer's non-delegable duties or of the master-servant relationship. As a matter of law, the Amended Petition fails to state facts sufficient to establish the existence of a cognizable legal duty owed by Snyder and Ritter, an essential element of an actionable negligence claim.

Point denied.

### Conclusion

The trial court's Judgment dismissing the Amended Petition without prejudice for failure to state a cause of action is affirmed.

All concur.

master (*i.e.*, the non-delegable duties of the employer), and misfeasance as breach of a duty independently owed to third persons, the court in *McCarver* held a co-employee's act of prying a "small loose rock in the roof of a mine without ascertaining the particularly hazardous condition of said roof, although this condition could have been ascertained by the ordinary method of tapping the roof with a hammer" to be an act of misfeasance and not nonfeasance. 268 S.W. at 690. Similarly, joint liability was found against an employer and a supervisory employee in *Jewell*, where a supervisor engaged in a "positive wrong or misfeasance" in ordering an employee into a place of danger. 132 S.W. at 711. These cases, and others like them, demonstrate the principle that a co-employee must have breached a personal duty owed to a fellow employee independent of the employer's non-delegable duties to be liable for negligence.