Fidel AMESQUITA, et al., Appellants,

v.

GILSTER–MARY LEE CORPORATION, et al., Respondents.

No. ED 99266.

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 10, 2013.

Gary M. Matheny, Gary M. Matheny, P.C., Farmington, MO, and Robert L. De-Voto, Robert L. DeVoto, L.C., St. Louis, MO, for appellants.

Charles S. Elbert, Kevin A. Sullivan, Kohn, Shands, Elbert, Gianoulakis & Gil-jum, LLP, St. Louis, MO, and David M. Remley, The Remley Law Firm, Cape Gir-ardeau, MO, for respondents.

KURT S. ODENWALD, Judge.

*Introduction*

Fidel Amesquita, Georgia Hawthorne, Sara Lane, Rachane Thitakom, and Mary Whiteside (collectively "Plaintiffs") appeal from the trial court's order granting the motions to dismiss of Gilster–Mary Lee Corporation ("GML") and Eric Asselmeier ("Asselmeier"), Donald Welge ("Welge"), Anthony Berry ("Berry"), and Gary Layton ("Layton") (collectively "Employee Defendants"). Plaintiffs alleged they suffered occupational diseases from diacetyl exposure while working at GML's popcorn production facility and that GML is liable in tort for ordinary negligence and punitive damages (Count I). Plaintiffs also alleged that Employee Defendants were individually liable under the "something more" doctrine and for civil conspiracy (Count II). Finally, Plaintiffs alleged the Employee Defendants were also liable for ordinary negligence (Count III). The trial

court granted GML's and Employee Defendants' (collectively "Defendants") motions to dismiss Plaintiffs' amended petition on the ground that The Workers' Compensation Law, as amended in 2005,[1] provided Plaintiffs' exclusive remedy against GML, and that Plaintiffs failed to state a claim against Employee Defendants.

Because The Workers' Compensation Law as amended in 2005 did not provide the exclusive remedy available to Plaintiffs' seeking damages for occupational disease injuries that occurred within the scope of their employment, Defendants' affirmative defense of workers' compensation exclusivity fails as a matter of law. Accordingly, we reverse the trial court's judgment dismissing Plaintiffs' Count I against GML and remand Plaintiffs' claim for trial.

Because Plaintiffs do not allege an independent duty owed by Defendant Employees to Plaintiffs, Plaintiffs allegations fail to state a cause of action against Employee Defendants for negligence, or any related action for civil conspiracy. Therefore, we affirm the trial court's judgment dismissing Counts II and III.

### Factual and Procedural History

Plaintiffs were employed in GML's popcorn production facility in McBride, Missouri. Popcorn produced at the McBride facility contained butter flavoring made from diacetyl. Diacetyl is produced from methyl ethyl ketone, a known lung, eye, and skin irritant. The butter flavoring used at the McBride facility was delivered using hydrogenated soybean oil, which becomes gaseous at 46 to 47 degrees Fahrenheit. The hydrogenated soybean oil used in the facility was heated to 110 to 120 degrees Fahrenheit, causing the oil and artificial flavoring to spread through the air. The heating vessels used to heat the soybean oil were also cleaned using compressed air, further dispersing the residual artificial flavoring.

GML's popcorn production facility in Jasper, Missouri used the same artificial butter flavoring. Beginning in 2001, GML, Welge, and Asselmeier became aware that workers in the Jasper facility had developed bronchiolitis obliterans, a severe respiratory disease associated with breathing the heated artificial butter flavoring. GML and Asselmeier were also notified that the artificial butter flavor used in the McBride facility could cause bronchiolitis obliterans, and were given recommendations on how to improve ventilation in the McBride facility in order to reduce the danger.

On March 30, 2004, GML distributed to Plaintiffs and its other employees a letter authored by Welge. The letter states in relevant part as follows:[2]

> We understand that some lawyers have arrived in the area looking for claims like those made by some former workers at the popcorn plant in Jasper, Missouri. It is certainly your decision whether or not to meet with these lawyers, but we

1. Since 2005, The Workers' Compensation Law (Chapter 287) has twice been amended by the legislature, once in 2012 and once in 2013. This appeal requires us to interpret the Law following the 2005 amendments, but before the recent amendments in 2012 and 2013. All statutory references are to RSMo. Cum.Supp. (2011).

2. Because the case comes before this Court after a motion to dismiss, we normally may not consider the content of the letter. *Walters Bender Strohbehn & Vaughan, P.C. v. Mason*, 316 S.W.3d 475, 479 (Mo.App.W.D.2010). However, Plaintiffs' amended petition incorporates by reference the contents of the letter. We therefore consider the contents of the letter as having been fully set forth in the petition itself.

feel it is very important you know the following facts.

- First, the flavor that was the subject of the lawsuit involving the former Jasper employee, manufactured by a company called International Flavors & Fragrances, is not and has never been used in McBride.
- Second, we have never had any claims of breathing illnesses of this nature reported at the McBride plant.
- Third, we have tested both the plant air and some employees at the McBride plant. These tests have shown no reason for us to believe a problem exists at the McBride plant.
- Finally, the situation at Jasper prior to Gilster–Mary Lee buying it in 1999 is substantially different from that at McBride.

On July 7, 2011, Plaintiffs filed an amended petition containing three counts. In Count I, Plaintiffs alleged GML breached its duty of care to Plaintiffs by failing to provide a work environment safe from the effects of diacetyl-containing butter flavoring. Plaintiffs alleged compensatory damages and sought punitive damages against GML. In Count II of their amended petition, Plaintiffs alleged claims against the Employee Defendants under the "something more" doctrine, asserting that the Employee Defendants affirmatively misrepresented the safety of working with diacetyl, causing Plaintiffs' injuries. Count II also alleged claims for civil conspiracy, asserting that the Employee Defendants actively engaged in a civil conspiracy to hide the risks of diacetyl exposure from Plaintiffs in order to avoid the cost of making the facility safe.

In Count III, Plaintiffs alleged that the Employee Defendants are liable in ordinary negligence for the same acts and omissions as alleged against GML in Count I. Plaintiffs additionally assert that under the 2005 amendments to The Workers' Compensation Law, the Employee Defendants are not protected by employer or co-employee immunity. GML and the Employee Defendants[3] filed a joint answer and affirmative defenses, and subsequently filed separate motions to dismiss.

GML's motion to dismiss was based on its affirmative defense of workers' compensation exclusivity. GML argued that under Section 287.120, The Workers' Compensation Law provided Plaintiffs the exclusive remedy for any injuries they may have incurred during their employment, and thus the trial court lacked statutory authority to hear the case. GML also argued that, in the alternative, the trial court should stay the action pending a determination by the Commission as to whether Plaintiffs' alleged injuries were covered by the Law.

Employee Defendants, including Welge, also filed a joint motion to dismiss Counts II and III of Plaintiffs' amended petition for failure to state a claim. Employee Defendants contended that Counts II and III failed to state a claim because the allegations did not aver that the Employee Defendants breached any duty to Plaintiffs other than GML's non-delegable duty to provide a safe work environment. Employee Defendants also argued that Count II of Plaintiffs' amended petition invoking the "something more" doctrine should be dismissed because Plaintiffs failed to allege sufficient facts, which if true, would establish that Employee Defendants committed any affirmative act of negligence. Em-

---

**3.** Welge did not join the answer, which alleged that Welge had not received service of process at the time it was filed.

ployee Defendants maintained Count II of Plaintiffs' amended petition for civil conspiracy must fail because Plaintiffs' did not allege any agreement by or among the Employee Defendants to commit a wrongful or unlawful act. Employee Defendants also averred the exclusivity provisions of that Section 287.120 barred Plaintiffs' negligence claim under Count III. Finally, Employee Defendants alleged that Welge should be dismissed from the action due to improper service of process.

After a hearing, the trial court granted each of the Defendants' separate motions to dismiss. The trial court held that it lacked statutory authority to hear Plaintiffs' claim against GML because of the exclusivity provision of Section 287.120. The trial court also granted Employee Defendants' motion to dismiss Counts II and III for failure to state a claim. Plaintiffs now appeal.

*Points on Appeal*

In their first point on appeal, Plaintiffs assert that the trial court erred in granting Defendants' motions to dismiss because, following the 2005 amendments to The Workers' Compensation Law, Plaintiffs' occupational disease claim is not limited to the workers' compensation system, but is cognizable in circuit court as a common law tort claim. In their second point, Plaintiffs contend the trial court erred in denying their claims of negligence under the "something more" doctrine and for civil conspiracy against Employee Defendants for failure to state a claim. In Point III, Plaintiffs argue the trial court erred in granting Defendants' motions to dismiss related to Plaintiffs' claims for punitive damages.

*Standard of Review*

■■■ We review *de novo* whether a petition states a claim. *Fenlon v. Union*

*Elec. Co.,* 266 S.W.3d 852, 854 (Mo.App. E.D.2008). A motion to dismiss for failure to state a claim upon which relief may be granted is solely a challenge to the adequacy of the plaintiff's petition. *Stein v. Novus Equities Co.,* 284 S.W.3d 597, 601 (Mo.App.E.D.2009). We accept as true all factual allegations asserted in the petition. *Id.* The petition states a claim if the facts, if proven true, meet the elements of a recognized cause of action. *Id.* at 602. If the petition fails to allege facts essential to recovery, dismissal for failure to state a claim is proper. *Id.*

*Discussion*

**I. The trial court erred in dismissing Plaintiffs' action against GML because The Workers' Compensation Law (Chapter 287) as amended in 2005 does not provide the exclusive remedy for injuries by occupational disease, and therefore, GML's affirmative defense of workers' compensation exclusivity fails as a matter of law.**

■■ Plaintiffs' first point on appeal relates specifically to the legislative amendments made to Chapter 287 in 2005. Plaintiffs assert that the 2005 amendments removed the exclusivity provisions for injuries caused by an occupational disease. More specifically, Plaintiffs argue that their occupational disease injuries do not fall within the scope of the exclusivity clause because the plain language of Section 287.120.2 applies only to workplace injuries that result from "accidental injury or death." Because their occupational diseases are not "accidental" injuries within the meaning of Chapter 287, Plaintiffs contend the exclusivity clause does not preclude their ability to pursue common law negligence actions for their injuries. We agree.

■■ In reviewing the trial court's dismissal for failure to state a claim, we give the petition its broadest intendment and construe the allegations favorably to the plaintiff. *Cornelius v. CJ*, 302 S.W.3d 176, 178 (Mo.App.E.D.2009). Our review is confined to the facts alleged in the petition and the exhibits incorporated therein by reference. *Id.* A petition may not be dismissed based on an affirmative defense unless the petition establishes "on its face and without exception" that the defense applies. *Id.* (quoting *K.G. v. R.T.R.*, 918 S.W.2d 795, 797 (Mo. banc 1996)).

■ To determine whether the trial court erred in granting Defendants' motion to dismiss on the ground of workers' compensation exclusivity, we must construe The Workers' Compensation Law as amended in 2005. In construing the Law, we adhere to general rules of statutory construction. *Motton v. Outsource Int'l*, 77 S.W.3d 669, 673 (Mo.App.E.D.2002). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). Additionally, pursuant to Section 287.800, we must strictly construe the provisions of Chapter 287.

The exclusivity provision of Chapter 287 is found in Section 287.120. That provision states, in relevant part:

1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this *chapter for personal injury or death of the employee by accident* arising out of and in the course of the employee's employment, and shall be released from all other liability thereof whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, *on account of such accidental injury or death*, except such rights and remedies as are not provided for by this chapter.

Section 287.120 (emphasis added). Section 287.020.2 defines an "accident" as: "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Plaintiffs have alleged in their petition that workplace injuries suffered by them are occupational diseases acquired *over time*, not injuries caused by a specific event *during a single work shift*. Accordingly, Plaintiffs' injuries are not the result of an "accident" to which the exclusivity provision applies.

The Western District has addressed the same issue of whether Chapter 287 provides the exclusive remedy for occupational disease claims in *State ex rel. KCP & L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14 (Mo.App.W.D.2011). After carefully reviewing the 2005 amendments, the Western District held that the exclusivity provisions of Section 287.120 do not apply to occupational disease claims. *Id.* at 18. The court explained that the 2005 revisions to the definition of "accident" limited the application of the exclusivity clause:

Prior to 2005, the definition of accident provided in relevant part that

> The word "accident" as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen identifiable event or series of events happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

§ 287.020.2, RSMo 2000. The 2005 amendments replaced this definition with the following:

> The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

§ 287.020.2.

*Id.* at 23. The Western District noted that the amended definition of "accident" is significant in two ways. First, the amended definition no longer includes a "series of events," which previously provided courts with some textual basis for including occupational disease within the meaning of "accident." *Id.* Second, the amendments removed the qualifier that the statutory definition of "accident" applied "unless a different meaning is clearly indicated by the context." *Id.* This qualifier had formerly allowed courts to adopt a broader definition of "accident" when the context so required. *Id.*

The Western District also carefully scrutinized the amendments to Section 287.067, which define the standards for compensability of occupational disease. The court found it significant that the legislature eliminated the cross-reference between Section 287.067 and Section 287.020:

> Prior to the 2005 amendments, § 287.067.2, RSMo 2000 provided:
>
> > An occupational disease is compensable if it is clearly work related *and meets the requirements of an injury which is compensable as provided in subsections 2 and 3 of section 287.020.* An occupational disease is not compensable merely because work was a triggering or precipitating factor. (Emphasis added.)

The 2005 amendments rewrote this provision, so that it now reads:

> An injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability. The "prevailing factor" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability. Ordinary, gradual deterioration, or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable.

§ 287.067.2.

*Id.* at 24. The *KCP & L* court explained that the elimination of the cross-reference to Section 287.020 resulted in a stand-alone compensability standard for occupational disease claims in Section 287.067, independent of Section 287.020. *Id.* at 25. The court reasoned that the creation of an independent compensation scheme for occupational disease provided further evidence of the legislature's intent to remove occupational disease from the narrow definition of "accident." *Id.* Accordingly, the Western District concluded that occupational disease is not an "accident" within the meaning of Chapter 287 and therefore the exclusivity provision for accidental in-

juries or death does not apply to claims for injuries by occupational disease. *Id.* at 30.

We have carefully considered both the majority opinion and the argument raised in the thorough and thoughtful dissenting opinion offered in *KCP & L*. While the dissent raises some compelling arguments, the circumstances under which the 2005 amendments were enacted leads us to agree with the majority opinion in *KCP & L*, i.e., that a plain reading of the 2005 amendments to Chapter 287 requires our holding that the 2005 legislative revisions to The Workers' Compensation Law did not limit an employee's remedy for injuries resulting from a work-related occupational disease to the workers' compensation system. We are persuaded that the narrow definition of "accident" as drafted by the legislature cannot be read to include occupational disease injuries. Rather, Chapter 287 as revised made a clear distinction between injuries by accident and injuries by occupational disease. We agree with the *KCP & L* court that the plain language of Section 287.120 limits that section to injuries by accident. *Id.* at 18. Accordingly, employees claiming work-related injuries as a result of occupational disease are not limited to the remedies provided by Chapter 287, and retain their right to pursue their common law claims in circuit court.

Our finding that Chapter 287 does not provide the exclusive remedy for work-related occupational disease claims does not necessarily compel the conclusion that occupational diseases are not compensable under The Workers' Compensation Law as amended in 2005. To the contrary, we agree with Defendants that the 2005 amendments did not completely remove occupational disease from coverage under the Law. Indeed, numerous provisions of Chapter 287 provide for the compensability of injury by occupational disease. Section 287.067 defines the term "occupational disease" and provides that "[a]n injury by occupational disease is compensable only if the occupational exposure was the prevailing factor in causing both the resulting medical condition and disability." Additionally, Section 287.110 broadly states that: "This chapter shall apply to all injuries received *and occupational diseases* contracted in this state...." (emphasis added). Moreover, in *Peters v. Treasurer of Mo. as Custodian of the Second Injury Fund*, this Court recently held that under the 2005 amendments, occupational disease constitutes a compensable injury for the purpose of Second Injury Fund liability. 404 S.W.3d 322, 334–24 (Mo.App.E.D. 2012), transfer denied (Jan. 29, 2013). The fact that Chapter 287 allows workers to pursue a remedy under Chapter 287 does not mandate that the statutory remedy provided is the employees' exclusive remedy. *KCP & L*, 353 S.W.3d at 28. The exclusivity of any remedy provided under the 2005 amendments to Chapter 287 is determined specifically by Section 287.120, which, as explained above, applies only to accidental injuries or death, and not injuries alleged by Plaintiffs to have resulted from an occupational disease. *Id.*

We are keenly aware that our holding represents a "substantial departure from prior law," and, with respect to occupational disease claims, eliminates the historic substitutional nature of The Workers' Compensation Law. *Id.* at 29. However, the genesis of this departure is the legislative revisions enacted in 2005. While our holding represents a departure from the accepted application and interpretation of the pre–2005 Workers' Compensation Law, we agree with the Western District that this holding "is not an 'absurd or illogical' result that would justify this Court in ignoring the plain language of the Act's various provisions." *Id.* at 29. As noted by the Western District, the Law provides for

parallel remedies in at least one other situation: Section 287.280.1 provides that an injured worker has the option of pursuing either an administrative or judicial remedy where the worker's employer fails to maintain statutorily required insurance. *Id.* Thus, it is not absurd or unprecedented for the legislature to have provided injured workers with a non-exclusive workers' compensation remedy. *Id.*

Because Chapter 287 does not provide the exclusive remedy for work-related injuries resulting from occupational disease, Defendants' affirmative defense of workers' compensation exclusivity fails as a matter of law. Accordingly, as to Count I, the trial court's order dismissing Plaintiffs' claim based on Defendants' affirmative defense is reversed and Count I is remanded for trial.

## II. The trial court did not err in dismissing Counts II and III of Plaintiffs' amended petition for failure to state a claim of negligence and civil conspiracy against Employee Defendants.

In their second point, Plaintiffs allege that the trial court erred in dismissing their claims of ordinary negligence, negligence under the "something more" doctrine, and civil conspiracy against Employee Defendants. We address the trial court's judgment dismissing each purported cause of action in turn.

### A. *Ordinary Negligence*

■ Plaintiffs argue that Employee Defendants are liable in ordinary negligence as a result of the 2005 amendments to Chapter 287. Plaintiffs correctly assert that, prior to 2005, the liberal construction of Chapter 287 extended employer immunity to also cover co-employees. *See Robinson v. Hooker,* 323 S.W.3d 418, 424–25 (Mo.App.W.D.2010). Plaintiffs argue that under the strict construction mandated by

the 2005 amendments, co-employees no longer enjoy the same immunity, and, therefore, Plaintiffs have a cognizable claim in ordinary negligence against Employee Defendants.

■ Plaintiffs who attempt to assert common law negligence actions against co-employees for workplace injuries are required to plead and prove the elements of negligence. *Hansen v. Ritter,* 375 S.W.3d 201, 208 (Mo.App. W.D.2012). Included in the plaintiff's burden is the requirement of demonstrating that the co-employee owed a duty to the plaintiff. *Id.*

In this case, Count III of Plaintiffs' petition fails to state a claim for negligence because it fails to allege that Employee Defendants owed any duty to Plaintiffs. The relevant paragraphs of Plaintiffs' amended petition assert as follows:

48. Exposure to ambient or airborne diacetyl or related compounds was and is cumulative insult to the pulmonary function of plaintiffs enhancing the substantial probability of continuing and progressive lung disease.

49. [Employee] Defendants knew or in the exercise of ordinary care should have known that the safe handling of diacetyl and its related compounds or methyl ethyl ketones that could become airborne in the work environment required a closed system to prevent inhalation of the same of minimize exposure and no such system existed or was implemented at the employer's facility in McBride, Missouri.

50. As a direct and proximate cause of the negligence and carelessness of defendants, as aforesaid, plaintiffs suffered unnecessary and deleterious pulmonary insult and injury as described elsewhere.

■ Nowhere in Count III do Plaintiffs allege facts that, if proven, would establish that Employee Defendants owed Plaintiffs any independent duty. *See Stein,* 284 S.W.3d at 604–605. The only duty relevant to Plaintiffs' allegations under Count III is GML's non-delegable duty to provide a reasonably safe work environment for Plaintiffs. While it may be inferred from Plaintiffs' amended petition that Employee Defendants knew of the dangers of diacetyl exposure and failed to protect Plaintiffs from those same dangers, the duty to make the workplace safe from known dangers is a non-delegable duty owed by the employer, not co-employees. *Gunnett v. Girardier Bldg. and Realty Co.,* 70 S.W.3d 632, 638 (Mo.App.E.D. 2002); *Hansen,* 375 S.W.3d at 208–9. It is well established that co-employees are not liable for the breach of an employer's non-delegable duty to provide a safe workplace. *Gunnett,* 70 S.W.3d at 638 (quoting *State ex rel. Badami v. Gaertner,* 630 S.W.2d 175, 180 (Mo.App.E.D.1982)) ("charging the employee chosen to implement the employer's duty to provide a reasonably safe place to work merely with the general failure to fulfill that duty charges no actionable negligence"); *Hansen,* 375 S.W.3d at 208.

Accordingly, the trial court correctly dismissed Count III of Plaintiffs' amended petition for failure to state a claim.

### B. *"Something More" Doctrine*

■ We next turn to Count II of Plaintiffs' amended petition, which asserts, *inter alia,* that Employee Defendants are liable under the "something more" doctrine.

■ As stated above, an employee's negligent failure to discharge the employer's nondelegable duty to make a workplace safe is not actionable against the employee because the duty is owed by the employer. *Gunnett,* 70 S.W.3d at 638. In order for an employee to become personally liable to a co-employee for injuries suffered in the scope and course of employment, the employee must have done "something more" beyond performing, or failing to perform, normal job duties:

> "[A] personal duty will arise out of circumstances where the co-employee engages in an affirmative act, outside the scope of employer's non-delegable duties, directed at a worker, increasing the risk of injury. For in engaging in a direct, affirmative act, the co-employee owes a personal duty to exercise ordinary care under the circumstances and to refrain from conduct that might reasonably be foreseen to cause injury to another."

*Id.* at 641.

Plaintiffs argue that their negligence claim under the "something more" standard is cognizable because the 2005 amendments removed the co-employee immunity previously afforded by the exclusivity provision. Plaintiffs are correct that under the pre–2005 liberal construction of Chapter 287, the exclusivity of workers' compensation as a remedy against employers was viewed to include the sole remedy against co-employees. *See Robinson,* 323 S.W.3d at 424–25. Plaintiffs maintain that the 2005 amendments require a strict construction, and under that construction, the term "employer" does not include co-employees. As a result, Plaintiffs argue that co-employees are no longer shielded from common law liability for claims of negligence by Section 287.120.2.

As the Western District recently explained in *Hansen v. Ritter,* the 2005 amendments do not affect the availability, or lack thereof, of any common law remedy against co-employees for workplace injuries. *Hansen,* 375 S.W.3d at 207–208. *Hansen* described in detail the evolution of

co-employee liability in Missouri both at common law and subsequent to the enactment of The Workers' Compensation Law. The court noted that prior to the adoption of The Workers' Compensation Law, co-employees were shielded from liability for acts within the scope of their employment because such acts were derivative of the employer's non-delegable duty, and did not arise from any independent duty owed by the co-employees to the injured plaintiff. *Id.* at 210. Although the source of co-employee immunity eventually became subsumed within the exclusivity provision, a common law cause of action alleging co-employee liability for tortious acts still fails when the co-employee has no independent duty to the injured co-employee. *See id.* at 213. The changes made to the exclusivity provision cited by the Plaintiffs do not create any additional liability for a co-employee. Rather, the revisions merely restore the relevant inquiry to whether the co-employee had any independent duty to the plaintiff.

As it relates to Count II of Plaintiffs' amended petition, we must determine whether Plaintiffs have alleged facts that, if true, establish an affirmative act by Employee Defendants that gave rise to a personal duty of care to Plaintiffs, that Employee Defendants breached their duty of care in the performance of that same act, and that the breach proximately caused Plaintiffs' injuries. *Gunnett,* 70 S.W.3d at 641.

We find that Plaintiffs have failed to meet their burden as the amended petition fails to allege that the breach of any independent duty owed by the Employee Defendants proximately caused Plaintiffs' injuries. The injuries alleged by Plaintiffs arise from GML's failure to provide a workplace with the proper safeguards to prevent diacetyl exposure, *i.e.,* from a breach of GML's non-delegable duty to provide a safe work environment. Plaintiffs do not allege that the Employee Defendants' representations caused Plaintiffs to incur additional exposure to diacetyl beyond what Plaintiffs were already exposed to as a result of GML's breach of its non-delegable duty. Accordingly, even if the Employee Defendants breached an independent duty to Plaintiffs through their affirmative representations as to the facility's safety, Plaintiffs did not allege that the breach proximately caused Plaintiffs any injury. Accordingly, the trial court properly granted dismissal of the Plaintiffs' negligence action under the "something more" doctrine in Count II.

### C. *Civil Conspiracy*

 We now turn to the viability of Plaintiffs' claim against Employee Defendants under a separate portion of Count II, which purports to allege civil conspiracy.

 Civil conspiracy is not its own cause of action. *Western Blue Print Co., LLC v. Roberts,* 367 S.W.3d 7, 22 (Mo. banc 2012). Civil conspiracy is a way to hold joint tortfeasors jointly and severally liable for some collectively-pursued wrongful goal. *8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc.,* 292 S.W.3d 439, 451 (Mo.App.E.D.2009). To demonstrate civil conspiracy, a plaintiff must show: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) [plaintiff] was thereby damaged." *Western Blue,* 367 S.W.3d at 22. Thus, plaintiffs must plead and prove some unlawful objective in order to state a claim of civil conspiracy. *Id.* "In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Id.*

Plaintiffs' claim of civil conspiracy is premised on the underlying negligence claims against the Employee Defendants in Counts II and III. However, as we have explained, Plaintiffs do not state a claim of negligence against Employee Defendants because they fail to allege facts that establish any independent duty owed by Employee Defendants to Plaintiffs, and do not allege that the breach of any independent duty proximately caused Plaintiffs' injuries. Because Plaintiffs otherwise fail to state a claim of negligence against the Employee Defendants, Plaintiffs' civil conspiracy claim also fails to allege any unlawful objective, an essential element of civil conspiracy. *Id.* Accordingly, the trial court properly granted the Employee Defendants' motion to dismiss Plaintiffs' claim of civil conspiracy.

### III. Plaintiffs' claims for punitive damages.

In their third point, Plaintiffs assert that the trial court erred in dismissing Plaintiffs' claims for punitive or exemplary damages against Defendants. Our review of the record reveals no finding of the trial court relating to punitive damages.

Punitive damages do not constitute an independent cause of action. *Jones v. Hous. Auth. of Kansas City, Mo.,* 118 S.W.3d 669, 675 (Mo.App.W.D.2003). Rather, a claim for punitive damages is incidental to the underlying cause of action. *Id.* Here, Plaintiffs' only claim for punitive damages is raised against GML and is set forth in Count I of their amended petition. The record clearly shows that the trial court's judgment of dismissal of Count I was predicated solely upon GML's affirmative defense of workers' compensation exclusivity. The trial court made no substantive ruling as to whether Plaintiffs adequately pleaded a claim for punitive damages against GML. Because Plaintiffs

raise on appeal an issue not decided by the trial court, we deny Point III.

*Conclusion*

The trial court's judgment dismissing Count I of Plaintiffs' amended petition is reversed, and Count I is remanded for proceedings consistent with this opinion. The judgment of the trial court dismissing Counts II and III of the amended petition is affirmed.

MARY K. HOFF, P.J. and ANGELA T. QUIGLESS, J., concur.

