

# Missouri Court of Appeals

## Southern District

### Division One

PAIGE PARR, a minor, by and through           )
her Conservator, JANETT WAID,                 )
JERIMY MOREHEAD, and CHARLES                   )
PARR,                                         )
                                              )
      Plaintiffs-Appellants,        )
                                              )
    vs.                              )    No. SD32602
                                              )    **Filed:  August 6, 2014**
CHARLES BREEDEN, WENDY                         )
COGDILL, and MELANIE BUTTRY,                   )
                                              )
      Defendants-Respondents.       )

### APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable Fred W. Copeland, Circuit Judge

**<u>AFFIRMED</u>**

On April 28, 2008, Kevin Parr ("Parr") was killed when the commercial motor vehicle he was driving for his employer, Breeden Transportation, Inc., left the road in a single vehicle accident.  His two children and father ("Plaintiffs") appeal from the trial court's grant of summary judgment to three of Parr's supervisory co-employees on Plaintiffs' claim for Parr's wrongful death based on alleged workplace negligence.  Plaintiffs raise two points on appeal.  At its core, each point claims that the trial court

1

erred in granting summary judgment because the record shows a genuine issue of material fact that if true would establish that the co-employee defendants owed Parr a legal duty sufficient to support a cause of action for workplace negligence. In view of the fact the points raise a common issue, we combine the points and consider them as a single point. We conclude that the co-employee defendants as a matter of law owed no legal duty to Parr under the common law, and that the Federal Motor Carrier Safety Administration regulations did not impose a separate legal duty on the co-employee defendants independent of the common law. The trial court's grant of summary judgment to the co-employee defendants is affirmed.

### Facts and Procedural History

A little less than two years after the single-car accident that killed Parr, his two children and father filed a suit for wrongful death against three of Parr's co-employees – Charles Breeden, President of Breeden Transportation, Wendy Cogdill (now Wendy Knupp), Director of Safety, and Melany Buttry,[1] an employee with the responsibility of "making sure drivers complied with health and safety regulations" ("Defendant Co-Employees").[2] In their Second Amended Petition, Plaintiffs alleged that Defendant Co-Employees "had a duty to provide a safe working environment to Kevin Parr, to monitor the physical condition of Kevin Parr to determine whether he was fit to drive a tractor-trailer, and to determine whether Kevin Parr was in compliance with Federal Motor Carrier Safety Administration Regulations." Based on this duty allegedly owed by Defendant Co-Employees to Plaintiffs' decedent, Plaintiffs asserted two causes of action

---

[1] The parties spell Ms. Buttry's first name as "Melanie." In an affidavit in the record, Ms. Buttry spelled her first name "Melany," and we use that spelling in our opinion.

[2] Wendy Cogdill denies she was Director of Safety or supervisor, and there is conflicting testimony about whether or not Melany Buttry was dispatcher; however, neither matters for purposes of this appeal.

against Defendant Co-Employees: (1) "[g]eneral [n]egligence," and (2) "despite knowing, or reasonably knowing, of Kevin Parr's [medical conditions], directed Kevin Parr to drive a tractor-trailer owned and/or operated by Breeden Transportation, Inc. on April 28, 2008, which direction was dangerous and reasonably recognizable to be hazardous and beyond the usual requirements of employment."

Defendant Co-Employees filed a motion for summary judgment. One ground for summary judgment asserted in the motion was that "plaintiffs are unable to offer any proof that defendants breached a duty owed to decedent." Viewing the record in the light most favorable to Plaintiffs as we must do under our standard of review, the uncontroverted facts and reasonable inferences from the record included the following: (1) "Kevin Parr was employed by Breeden Transportation, Inc. and[, on April 28, 2008, was] driving northbound on Interstate 55 hauling gas when he was involved in a fatal vehicle accident;" (2) "Defendants were employees of Breeden Transportation, Inc. at all times material to this lawsuit" with the responsibilities described above; (3) A medical examiner certified in a November 2, 2007 medical examination report that Parr was "physically fit to operate a commercial motor vehicle" and "qualifies for 2 year certificate;" (4) The November 2, 2007 report indicated that Parr "[s]mokes" and was "[o]verweight" but did not "reveal" any disqualifying medical condition; and (5) Breeden Transportation, Inc., did not investigate December 2006 and April 11, 2008 commercial motor vehicle accidents in which Parr was involved other than asking Parr how the accident occurred, did not require that Parr receive education or training after either of the accidents, and did not require that Parr be recertified as physically fit to operate a commercial motor vehicle by a medical examiner after the April 11, 2008 accident.

3

In Plaintiffs' memorandum in opposition to summary judgment, Plaintiffs argued that Defendant Co-Employees breached the duty they owed Plaintiffs' decedent:

> by failing to remove Mr. Parr from the road, pending a medical evaluation and/or treatment, at minimum following the accident of April 11, 2008. Further exacerbating the breach, Defendants utterly failed to inquire into whether Mr. Parr had any sort of health condition that may have contributed to either of his prior single vehicle accidents.

Plaintiffs further argued that they:

> have also presented evidence of Defendants' affirmative acts which injured Mr. Parr. Defendants clearly placed Mr. Parr back on the road when they were aware, or should have been aware, that he was not safe to operate a motor vehicle. This affirmative placing of Mr. Parr back on the road, without even bothering to ask him about his health following two previous single vehicle accidents, the most recent of which was only 17 days before the fatal accident is more than enough to create a genuine issue of material fact as to whether Defendants breached the "Something More" doctrine.

After the court entered a docket entry granting summary judgment, Plaintiffs filed a motion to "alter" judgment and argued for the first time that the Federal Motor Carrier Safety Administration regulations imposed on Defendant Co-Employees a legal duty to Parr that was independent of Missouri common law. The motion to "alter" the judgment was denied.

**Standard of Review**

Under Rule 74.04(c),[3] a moving party is entitled to summary judgment if the summary judgment record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)); *ITT Commercial Finance Corporation v. Mid-America Marine Supply Corporation*, 854 S.W.2d 371, 380-82 (Mo. banc 1993). A "genuine issue":

---

[3] All references to rules are to Missouri Court Rules (2014).

4

exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A "genuine issue" is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the "genuine issues" raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper.

*ITT Commercial*, 854 S.W.2d at 382. Further:

Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert each element of the non-movant's claim in order to establish a right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. Regardless of which of these three means is employed by the "defending party," each establishes a right to judgment as a matter of law.

*Id.* at 381.

In reviewing whether the trial court properly granted summary judgment, we:

review the record in the light most favorable to the party against whom judgment was entered. *Zafft v. Eli Lilly*, 676 S.W.2d 241, 244 (Mo. banc 1984); *Cooper v. Finke*, 376 S.W.2d 225, 228 (Mo.1964). Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978); *Dietrich v. Pulitzer Publishing Company*, 422 S.W.2d 330, 333 (Mo.1986). We accord the non-movant the benefit of all reasonable inferences from the record. *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993); *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988).
Our review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *E.O. Dorsch Electric Co. v. Plaza Const. Co.*, 413 S.W.2d 167, 169 (Mo.1967). The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Elliott v.*

5

*Harris*, 423 S.W.2d 831, 834 (Mo. banc 1968); *Swink v. Swink*, 367 S.W.2d 575, 578 (Mo.1963).

*Id.* at 376.

## Analysis

As mentioned previously, each of Plaintiffs' two points relied on at its core claims that the trial court erred in granting summary judgment because the record shows a genuine issue of material fact that if true would establish that Defendant Co-Employees owed fellow employee Parr a legal duty sufficient to support a cause of action for workplace negligence.[4] Plaintiffs contend that their claims fall squarely within the "something more" doctrine of *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175 (Mo. App. E.D. 1982) (en banc), or the common law as set forth in *Hansen v. Ritter*, 375 S.W.3d 201, 208 (Mo. App. W.D. 2012).

An employee's common-law cause of action against a co-employee for workplace negligence has the same elements as all claims of negligence – (1) "existence of a duty," (2) breach of that duty, and (3) injury proximately caused by the breach. *Hansen*, 375 S.W.3d at 208. "'[T]he threshold matter is to establish the existence of a duty owed by the co-employee.'" *Id.* (internal citation omitted); *see also Id.* at 213. Unlike the other elements of a negligence cause of action, the existence of a duty is a question of law for the court. *Id.* at 208; *see also Leeper v. Asmus*, No. WD76772, ___ S.W.3d ___, 2014 WL 2190966, at *3 (Mo. App. W.D. May 27, 2014) ("existence of duty is a question of law to be decided by the court" (internal citation omitted)).

---

[4] Our analysis is confined to the period between the amendment of the Workers' Compensation Law in 2005 and 2012 when an employee retained a common-law cause of action against a co-employee for workplace negligence that occurred in that period. *Leeper v. Asmus*, No. WD76772, ___ S.W.3d ___, 2014 WL 2190966, at *1 (Mo. App. W.D. May 27, 2014).

6

At common law, an employer has a general, non-delegable duty to use reasonable care, and this general duty gives rise to five, specific, non-delegable duties relevant to safety:

> (1) to provide a safe workplace; (2) to provide safe equipment in the workplace; (3) to warn employees about the existence of dangers of which the employees could not reasonably be expected to be aware; (4) to provide a sufficient number of competent fellow employees; and (5) to promulgate and enforce rules governing employee conduct for the purpose of enhancing safety.

*Hansen*, 375 S.W.3d at 208 (internal citations omitted); *see also Leeper*, 2014 WL 2190966, at \*5-6.  An employer's non-delegable duties are continuing in nature.  *Leeper*, 2014 WL 2190966, at \*6.

> Further, at common law:

> a co-employee who has violated an independent duty to an injured employee will be "answerable to such person for the consequences of his negligence, and he may not escape liability on the supposed differences in nonfeasance, misfeasance and malfeasance." *Giles v. Moundridge Milling Co.*, 351 Mo. 568, 173 S.W.2d 745, 751 (1943) (citing *Devine*, 349 Mo. 621, 162 S.W.2d 813; *Lambert*, 339 Mo. 677, 98 S.W.2d 752) (other internal citations omitted).  However, a co-employee's independent duties owed to fellow employees do not include the duty to perform the employer's non-delegable duties, as those duties necessarily derive from, and are not independent of, the master-servant relationship.

*Hansen*, 375 S.W.3d at 213-14, 217; *see also Leeper*, 2014 WL 2190966, at \*4 ("a co-employee's personal duties to fellow employees do not encompass a legal duty to perform the employer's nondelegable duties" (internal citation omitted)).

The "something more" standard is not part of the common law, and a co-employee may owe an independent duty to another co-employee under the common law only when the co-employee's "workplace injury is in no way attributable to the employer's breach of its non-delegable duties."  *Leeper*, 2014 WL 2190966, at \*1-2, \*13,

7

*17 & n.16.  Plaintiffs argue that *Leeper* controls the resolution of this summary judgment.  *Leeper* is not controlling.

Plaintiffs' claim is that Defendant Co-Employees owed Parr a duty (1) to provide a safe working environment to Parr, (2) to monitor the physical condition of Parr to determine if he was fit to drive a tractor trailer, and (3) to determine whether Parr was in compliance with the Federal Motor Carrier Safety Administration Regulations.  The first allegation was clearly the non-delegable duty of the employer under the common law and workers' compensation statutes.  The second is a contention that co-employees have a legal duty to protect Parr from his own decision to work as a driver and his own conduct with respect to his health and employment as a driver of a commercial motor vehicle.  To be clear, we are not talking about a duty to the general public.  We are not talking about an action that increased Parr's risk of harm to others.  Plaintiffs have not referred us to any authority that supports the existence of such a duty on the part of co-employees to their co-employee, and we are not aware of any authority that supports Plaintiffs' claim.  Likewise, we find no authority that the Federal Motor Carrier Safety Administration Regulations created an independent duty of co-employees to determine whether Parr was a danger to himself based on his own health history.

As importantly, the only affirmative act by Defendant Co-Employees alleged and supported by reasonable inferences from the record was that Defendant Co-Employees assigned Parr to deliver goods by driving a commercial motor vehicle.  Assigning Parr this type of work was a normal job duty necessarily attendant to performing the employer's business as directed by the employer.  He had received a clean bill of health five months prior to the accident in question.  Further, if Parr's death was attributable to

8

the breach of any duty or duties, it was attributable at least in part to breach of the employer's non-delegable duties to enforce safety rules (including the Federal Motor Carrier Safety Administration regulations), to provide competent employees (i.e., drivers that were medically able to operate commercial motor vehicles safely), and to provide a safe workplace. As a result, Defendant Co-Employees owed Plaintiffs' decedent no legal duty as a matter of law under either the "something more" standard or the common law.

Plaintiffs' points are denied, and the trial court's grant of summary judgment to Defendant Co-Employees is affirmed.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., C.J. – Dissents In Separate Opinion

9


PAIGE PARR, a minor, by and through )
her Conservator, JANETT WAID, )
JERIMY MOREHEAD and CHARLES PARR, )
)
        Plaintiffs-Appellants, )
)
    vs. )    No. SD32602
)
CHARLES BREEDEN, WENDY COGDILL, )
and MELANIE BUTTRY, )
)
        Defendants-Respondents. )

### DISSENTING OPINION

I respectfully dissent. In my opinion, the majority opinion mischaracterizes the points relied on by Kevin Parr's survivors ("Survivors"), which leads to not only an incorrect analysis, but an incorrect result.

Survivors' first point states as follows:

> The trial court erred in entering summary judgment in favor of Respondents Charles Breeden, Wendy Cogdill, and Melanie Buttry because a genuine issue of material fact exists as to whether Respondents knew or should have known Kevin Parr was not safe to operate a commercial motor vehicle in that Respondents admitted that they have a duty to ensure that every driver who drove for Breeden Transportation was safe to operate a commercial motor vehicle, that Respondents knew or should have been aware of Kevin Parr's inability to safely operate a commercial motor vehicle due to his health condition and two previous single vehicle accidents within the eighteen months preceding his fatal accident, and that Respondents failed to take steps to address Kevin Parr's condition, thus causing or contributing to cause the fatal accident of April 28, 2008.

Survivors' second point states as follows:

> The trial court erred in entering summary judgment in favor of Respondents because there was at minimum a genuine issue of material fact as to whether Respondents breached their individual duties, separate and apart from the nondelegable duties of an employer, which arose from federal regulations in that Respondents failed to take the steps to either remove Kevin Parr from the road, have him medically recertified, or provide him with additional training following his multiple accidents, thus causing or contributing to cause the accident resulting in Kevin Parr's death on April 28, 2008.

By combining the points into one, for purposes of analysis, the majority opinion concludes the points raise a common issue. They do not.

Point I speaks to a genuine issue of material fact as to whether Co-Employee Respondents knew or should have known that Parr was not safe to operate a commercial motor vehicle, and goes on to contend that Co-Employee Respondents *admitted* they had a duty to ensure that every driver who drives for Breeden Transportation was safe to operate a commercial motor vehicle. If Survivors were able to present their evidence to a jury, raised by this point, they would have the opportunity to prove Parr was unable to safely operate a commercial motor vehicle because of his health condition and the two previous single motor vehicle accidents he had within 18 months, of which caused or contributed to cause his fatal accident. Survivors alleged these facts, but the majority opinion precludes them from ever having an opportunity to prove these facts to a jury.

Point II speaks to different issues. Point II speaks to a genuine issue of material fact as to whether Co-Employee Respondents breached their individual duties to Parr, separate and apart from the nondelegable duties of an employer, to provide a safe place to work. Those duties arise from federal regulations, which if followed, would have resulted in requesting medical recertification for Parr or providing him with additional training. These failures caused or contributed to cause his death thus creating the cause of action in Survivors—a statutorily

2

created cause of action permitted by section 537.080,[1] which was first codified by our General Assembly in 1939. In other words, "but for" the failure of Co-Employee Respondents, as alleged in this case, it certainly can be argued that Survivors would not have a need to file this litigation. Since the majority opinion deprives Survivors of the ability to attempt to prove their case before a jury, this is another question to which we will never know the answer.

Unfortunately, by combining these points, Survivors are deprived of their day in court. In my opinion, Survivors will never know whether Co-Employee Respondents did or did not fulfill their duties to Parr.

It is also my opinion that the majority opinion incorrectly concludes the issue of a legal duty raised by this appeal and the analysis that leads to that conclusion.

The majority opinion concludes that Co-Employee Respondents, as a matter of law, did not owe a legal duty to Parr, which duty is now raised by Survivors. By characterizing this appeal as presenting nothing more than an interpretation of the law as to the legal duty owed by Co-Employee Respondents to Survivors, the majority opinion overlooks or ignores precedent in our state.

The majority opinion concludes that Co-Employee Respondents owed no legal duty under the common law to Parr, and as asserted by Survivors here, to Survivors themselves. That is incorrect. In *Leeper v. Asmus*, --- S.W.3d ---- 2014 WL 2190966 (Mo.App. W.D. May 27, 2014) *reh'g and/or transfer denied* June 24, 2014, the Western District outlined in great detail how and why co-employees are responsible to one another between the legislature's amendments in 2005 and 2012.

In *Leeper*, an employee injured while working on a drilling rig brought a negligence action against a co-employee, alleging breach of co-employee's common law duty of care in failing to

---

[1] All references to statutes are to RSMo 2000, unless otherwise indicated.

3

perform his job duties as he had been directed, thereby causing employee's injuries. *Id.* at *1.

The Western District held that the dismissal was predicated on an incorrect statement of Missouri

law, warranting reversal and remand. *Id.* at *17. Specifically, the Court held that there was a

common law duty owed by co-employee to employee independent of employer's non-delegable

duties. *Id.*

In *Leeper*, the Western District explained:

Leeper raises a single point on appeal. . . . In effect, Leeper argues that the common law duty owed by a co-employee in negligence does not align with the "something more" test. We agree.

### The Legislature's 2005 Amendment to Section 287.800 Restored the Common Law of Co–Employee Negligence

The 2005 amendment to section 287.800 required the [Workers' Compensation] Act to be strictly construed. In *Robinson* [*v. Hooker*, 323 S.W.3d 418 (Mo.App.W.D.2010)] we held that strict construction no longer permitted us to construe the Act to immunize co-employees by sweeping their conduct into the statutory definition of "employer." [*Id.*] at 423–25. The effect of strict construction of the Act was to remove co-employees, in most circumstances, from the protective reach of the Act's exclusivity provision. *Id.* at 425.

Many misread *Robinson* as creating a carte blanche right to pursue claims of co-employee negligence for all workplace injuries. *Hansen* [*v. Ritter*, 375 S.W.3d 201 (Mo.App.W.D.2012)] clarified that *Robinson* did not create an otherwise non-existent remedy against co-employees. [*Id.*] at 207. Instead, *Robinson* held that the 2005 amendment of the Act restored the remedy against co-employees as it existed at common law. *Id.* *Hansen* addressed the common law remedy against co-employees and determined that:

[A]t common law, a co-employee who has violated an *independent* duty to an injured employee will be "answerable to such person for the consequences of his negligence." ... However, a co-employee's independent duties owed to fellow employees do not include the duty to perform the employer's nondelegable duties, as those duties necessarily derive from, and are not independent of, the master-servant relationship.

*Id.* at 213–14 (citation omitted) (emphasis in original). Thus, for workplace injuries subject to the 2005 amendment of the Act, injured employees could separately pursue a cause of action against negligent co-employees so long as the

4

co-employee owed the injured employee a duty of care at common law. "[U]nder the common law, a co-employee's personal duties to fellow employees do not encompass a legal duty to perform the employer's nondelegable duties." *Carman v. Wieland*, 406 S.W.3d 70, 77 (Mo.App.E.D.2013) (citing *Hansen*, 375 S.W.3d at 217).

*Hansen* did not "definitively determine the precise parameters of a co-employee's personal duties to a fellow employee sufficient to support an actionable claim of negligence." *Hansen*, 375 S.W.3d at 217. The plaintiff in *Hansen* did not allege independent duties owed by a co-employee, but instead pled that the co-employee was "assigned the duty to provide a safe workplace," and thus the duty to perform the employer's nondelegable duties. *Id.* at 206. Here, in stark contrast, Leeper has attempted in his amended petition to differentiate between a personal duty owed by Asmus and the employer's nondelegable duties. We must determine whether Leeper's allegations are sufficient to establish that Asmus owed an independent duty of care. "Unless a petition asserts a personal duty owed by a co-employee that exists independent of the employer's nondelegable duties, and thus a duty that would exist independent of the master-servant relationship, the petition will not survive a motion to dismiss for failure to state a cause of action for negligence." *Hansen*, 375 S.W.3d at 217.

***At Common Law, it Must First be Determined Whether a Workplace Injury is Attributable to a Breach of The Employer's Nondelegable Duties, a Question of Fact***

At common law, employers could be sued in negligence for workplace injuries. Employers owed employees the general duty to exercise ordinary care to protect employees from the foreseeable risks and perils of employment. *Kelso v. W.A. Ross Constr. Co.*, 337 Mo. 202, 85 S.W.2d 527, 534 (1935) (observing that the employer's specific nondelegable duties arise from the general duty of an employer to use "the reasonable care of the average prudent person under similar circumstances"); *Moles v. Kansas City Stock Yards Co. of Maine*, 434 S.W.2d 752, 754 (Mo.App.1968) (holding that at common law, "[a] duty rests upon the [employer] not to expose the [employee], in the discharge of his duty, to perils and dangers against which the master may guard by the exercise of reasonable care") (citation omitted). The employer's general duty of care was nondelegable, and manifested itself in several specific nondelegable duties:

> 1. The duty to provide a safe place to work.
>
> 2. The duty to provide safe appliances, tools and equipment for the work.
>
> 3. The duty to give warning of dangers of which the employee might reasonably be expected to remain ignorant.

5

4. The duty to provide a sufficient number of suitable fellow employees.

5. The duty to promulgate and enforce rules for the conduct of employees which would make the work safe.

W. Prosser, LAW OF TORTS, section 80, p. 526 (4th ed.1971); *see also Hansen*, 375 S.W.3d at 208–09; *Carman*, 406 S.W.3d at 76–77. Because the employer's general and specific duties of care are nondelegable, "the employer cannot escape its dut[ies] by delegating the task to another. When an employee fails to perform [one of] the employer's nondelegable duty, the failure rests with the employer, not the employee." *Carman*, 406 S.W.3d at 76–77. Thus, at common law, co-employees were not chargeable in negligence for injuries attributable to the employer's breach of a nondelegable duty. *Kelso*, 85 S.W.2d at 534. The underpinning for this rule recognized that employees have no meaningful ability to control whether an employer's nondelegable duties will be performed. *Id.* (holding that the employer's nondelegable duties "often concern matters beyond the control of individual employees"); *see also*, *Stitt by Stitt v. Raytown Sports Ass'n, Inc.*, 961 S.W.2d 927, 930 (Mo.App.W.D.1998) (holding that duty requires alleged tortfeasor to have "some right or obligation to control the activity which presents the danger of injury").

The employer's nondelegable duties are continuing in nature. *Bender v. Kroger Grocery & Baking Co.*, 310 Mo. 488, 276 S.W. 405, 408 (1925). Thus, "[t]he [employer] [is] liable for the negligent performance of any act ***directed by it to be performed*** by any employee, whether of high or the most lowly degree, which affect[s] the safety of th[e] [work]place. The duty of exercising ordinary care to keep such [work]place reasonably safe [is] a continuing and nondelegable duty." *Id.* (emphasis added). Risks that are attendant to performing the employer's work ***as directed*** are thus necessarily subsumed within the employer's nondelegable duties, and cannot support an independent personal duty owed by a co-employee. *Kelso*, 85 S.W.2d at 534.

Though the employer's nondelegable duties are expansive and continuing in nature, they are not unlimited. At common law, "[e]mployers are not insurers of the safety of employees." *Graczak v. City of St. Louis*, 356 Mo. 536, 202 S.W.2d 775, 777 (1947). *See also Moles*, 434 S.W.2d at 754 ("[A] master is not an insurer against injuries which a servant may incur in the discharge of his duties."). It follows that some workplace injuries at common law could not be attributed to a breach of the employer's nondelegable duties, and were instead attributable to the fault of the injured employee or of a co-employee. To assign responsibility for a workplace injury at common law, the necessary starting point was to first determine whether the injury was caused by a breach of the employer's nondelegable duties.

6

In *Gimmarro v. Kansas City*, 342 Mo. 428, 116 S.W.2d 11 (1937), our Supreme Court held that the employer breached its nondelegable duty to provide a reasonably safe place to work. 116 S.W.2d at 12–13. The employer should have known of the danger of requiring employees to work in trenches below excavated rock without the presence of barricades. *Id.* at 13. In other words, the employer negligently permitted a hazardous condition and an unsafe place to work. *Id.* Because the employer breached its nondelegable duties, the employer was liable in negligence when a foreman ordered the plaintiff to work in the dangerous location. *Id.*

In *Bender*, an employee ordered an employee to detach and move a tractor from the trailer it had been hauling, but failed to warn a third employee inside the trailer. 276 S.W. at 405–06. The employee who disconnected and moved the tractor failed to put down the trailer leg, causing the employee inside the trailer to be injured when the trailer tipped forward. *Id.* at 406. The court concluded that the order to detach and move the tractor from the trailer was attendant to performing the employer's work as directed, and that the resulting injury was thus attributable to the employer's nondelegable duty to see that its work as directed was not negligently performed. *Id.* at 407–08. The employer was liable in negligence, but the negligent employee was not.

The outcomes in *Gimmarro* and *Bender* are illustrative of the broad expanse of the employer's nondelegable duties. An employer must create a safe work environment, and must take precautions to protect against foreseeable risks and perils in the work environment, as in *Gimmarro*. And because the nondelegable duties are continuing, tasks necessarily attendant to the employer's work and performed at the employer's direction are normally chargeable to the employer's nondelegable duties if negligently performed, as in *Bender*.

However, because employers are not insurers against workplace injuries at common law, some workplace injuries cannot be attributed to a breach of the employer's nondelegable duties. In *Marshall v. Kansas City*, 296 S.W.2d 1, 2 (Mo.1956), the Supreme Court set aside a verdict in favor of an employee premised on the theory that the employer negligently failed to furnish safe tools and a safe place to work. Plaintiff was injured when a co-employee, who had been directed to get and connect a hose to a compressor by a foreman, began shaking and pulling on the hose to remove kinks. *Id.* In the process, the plaintiff became entangled in the hose, and was tripped by the jerking movements of the hose. *Id.* The Supreme Court explained the difference between an employer's nondelegable duties and duties owed independently by a co-employee. The lengthy discussion is instructive:

7

The employer, here the city, owes to its employees the nondelegable duty to furnish safe tools and appliances and a reasonably safe place to work and failing in these respects is subject to liability for injury resulting to its employees. There were kinks in the hose and it was necessary to get them out before attaching the hose to the jackhammer, but there is no evidence or claim by the appellant that the hose was defective; [Plaintiff's] injury came about by reason of [co-employee's] negligent use of the hose and not because it was defective. Likewise the place of work was not unsafe and the hazard was not brought about by the manner in which the work was being done; the danger came about by reason of the manner in which [co-employee] handled the hose.... ***[Co-employee's] suddenly and unexpectedly jerking the hose and tripping [Plaintiff] was not, of course, the exercise of due care on his part, but it does not support the inference or demonstrate negligence on the part of the city with respect to either the tools furnished, place of work or the manner in which the work was being done. In the particular circumstances it can only be said ... that [Plaintiff's] injuries resulted from the negligent act of his fellow employee and not be reason of the breach of any nondelegable duty owed by the city.***

*Id.* at 3 (internal citations and quotations omitted) (emphasis added). The court contrasted its holdings in other cases, including *Gimmarro*, noting particularly that *Gimmarro* "is a typical illustration of injury and liability resulting from a hazardous condition and an unsafe place to work due to the method or manner in which work was being done." *Id.*

*Marshall's* emphasis on the fact that its holding was dependent upon the "particular circumstances" before it is significant. *Id.* Had the facts in *Marshall* supported the inference that the employer knew or should have known of its employee's careless conduct and failed to take measures to remediate the risk or peril, then a fact finder could have concluded that the workplace injury was the result of a breach of the employer's nondelegable duties. Or, had the co-employee in *Marshall* been directed by a supervisor to shake the hose to remove kinks, the workplace injury would have been attributable to the employer's non-delegable duties as the co-employee would have been performing his work as directed, albeit negligently. The salient point is that at common law, before assessing whether a co-employee owed an independent duty of care, it was first required to determine whether the workplace injury was attributable to a breach of the employer's nondelegable duties, a question of fact.

8

The Supreme Court clearly articulated this point in *Kelso*:

> Since negligence in a master and servant case depends upon the existence of a duty on the part of the master, ***the ultimate question to be first determined in every case is whether the master is guilty of a breach of duty to the servant who brings the action.***

85 S.W.2d at 534 (internal citations and quotations omitted) (emphasis added).  In *Kelso*, an employee was injured by a truck while working on crushed rock piles. *Id.* at 533–34.  The employer contended that it owed no duty to the employee, and that the employee's injuries were a result of his own negligence or the negligence of the co-employee truck driver for whom the employer was not liable. *Id.* at 534. The employee contended that his claims against the employer were based on the employer's "nondelegable duties with reference to the safety of the place and the method in which the work was done there." *Id.*  The Supreme Court concluded that it was a proper question for the jury in that case whether "***the system of work adopted by the [employer] was an improper one***" and thus unsafe. *Id.* at 536 (emphasis added).  In other words, it was for the jury to first determine whether the workplace injury could be attributed to the employer's breach of nondelegable duties, as resolution of that issue would control whether the co-employee could be liable in negligence.

The determination of an employer's breach of its non-delegable duties is a question of fact. *See Luallen v. Reid*, 58 S.W.3d 50, 53 (Mo.App.W.D.2001) (holding that "where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court").  The facts and circumstances unique to each workplace injury will thus bear on whether the workplace injury can be attributed to breach of the employer's nondelegable duties.  On this point, our Supreme Court's decision in *Kelso* is again instructive:

> The general standard of care, by which the duty of an employer is determined, is that required of every one in all relations with others; namely the reasonable care of the average prudent person under similar circumstances.  The more specific duties which arise from the general duty of an employer to use reasonable care are:  To see that the place of work is reasonably safe; to see that suitable instrumentalities are provided; and to see that those instrumentalities are safely used.  These nondelegable duties are duties of the employer to his employees and not of fellow servants to each other.  These duties are all closely related, and often concern matters beyond the control of individual employees.... [T]he place in which the work is done cannot always be separated from the instrumentalities with which the work is done and it is often difficult, if not impossible, to say with confidence which of these two conceptions is appropriate to the

9

facts in evidence. For example, a locomotive, which is clearly a piece of machinery so far as the engineer and fireman are concerned, is just as clearly something which makes the place of work unsafe as regards a trackman who is run down by it. Thus, the manner in which instrumentalities are used may make a place safe or unsafe as a place of work, and, therefore, the duty to see that instrumentalities are safely used may become the most important element in the safety of a workman in his place of work.... A safe method of doing the work is something that the employer can provide to safeguard his employees from some risks of the shifting and changing of physical surroundings of the place of work, and the use of the required instrumentalities therein; and when it is necessary for their protection, in the exercise of reasonable care, it should be held to be a part of his duty to them and his failure to perform it is negligence. In other words, the employer's duty is not merely safety of the place of work of his employee, but also his safety in his place of work; in short, a safe environment as well as a safe place.

This duty is performed by providing a safe method of work, and it properly arises from circumstances where an employee cannot safely look out for himself because of the complexity of the operations under way. One who employs servants in complex and dangerous business ought to prescribe rules sufficient for its orderly and safe management. The chief circumstance on which the duty to do this depends is that the business is an intricate and complex one in which different workmen or groups of workmen have distinct tasks, and one group in the performance of its tasks is liable to endanger the safety of some other groups engaged in different tasks.

The distinctive characteristic elements of the duty to see that instrumentalities are safely used are obviously: (1) General orders issued for the guidance of servants; (2) particular orders with reference to the details of the work during its progress. As regards general orders, the master may be conceived to be subject to three obligations: (1) To frame suitable rules and regulations (2) To bring those rules and regulations to the knowledge of the servants for whose benefit they are framed (3) To carry out those rules and regulations in such a manner that the objects for which they are framed may be attained.... *Except in cases in which the master is himself directing the work in hand, his obligation to protect his servants does not extend to protecting them from the transitory risks which are created by the negligence of the servants themselves in carrying out the details of that work. In other words, the rule that the master is bound to see that the*

10

*environment in which a servant performs his duties is kept in a reasonably safe condition is not applicable where that environment becomes unsafe solely through the default of that servant himself, or of his fellow employees....*

However, an obligation of the employer to warn employees of certain transitory dangers, under some circumstances does arise out of his duty to conduct the business on a safe system.... A master's duty does not end with prescribing rules calculated to secure the safety of employees. It is equally binding on him honestly and faithfully to require their observance.

*Id.* at 534–36 (internal citations omitted) (emphasis added). *See also*, *Gunnett v. Girardier Building and Realty Co.*, 70 S.W.3d 632, 639 (Mo.App.E.D.2002) ("Once the facts and circumstances are known, whether this personal duty exists in any particular situation is a question of law, to be determined by the court.").

Thus, before a court can determine whether a co-employee owes a duty in negligence at common law (a question of law), it must first be determined whether the workplace injury is attributable to the employer's breach of a nondelegable duty, a question of fact unique to the workplace, and influenced by, among other things: the nature of the employer's work; the risks and perils attendant to doing the employer's work as directed; whether the instrumentalities of the work are safe; whether a co-employee causing injury was acting as directed by the employer; whether the methods for performing the work are safe; the competency of the employees hired to perform the work; the training of employees; the rules and regulations of the workplace adopted by the employer to protect workers from the risks and perils of the work about which the employer should have known; the communication and enforcement of these rules and regulations; and other facts or circumstances which might tend to establish the existence of a risk or peril that, through the exercise of ordinary care, the employer could reasonably have acted to prevent. If, after considering all relevant facts and circumstances, an employee's workplace injury can be attributed to the employer's breach of a nondelegable duty, then a negligent co-employee owes no duty in negligence to the injured employee as a matter of law. Conversely, if an employee's workplace injury is not attributable to the employer's breach of a nondelegable duty, then a negligent co-employee may owe a legal duty to the injured employee. In other words, the co-employee's negligent act or omission is independent of the master-servant relationship. *Hansen*, 375 S.W.3d at 213. Plainly, the starting point is to *first* determine whether a workplace injury is attributable to a breach of the employer's nondelegable duties, a question of fact.

***The "Something More" Test Determines whether a Co–Employee owes an Actionable Duty of Care in Negligence Based on the Nature and Attributes of the Co–Employee's Conduct***

The Act became effective in 1927. *See Bethel v. Sunlight Janitor Service*, 551 S.W.2d 616, 618 (Mo. banc 1977). For years, employers or employees were permitted to opt out of the Act, allowing employers under some circumstances to defend workplace injury claims by asserting the affirmative defenses of contributory negligence, assumption of the risk, or the fellow servant doctrine. Section 287.080 (RSMo 1949); *see* W. Prosser, LAW OF TORTS, section 80, pp. 526–27 (4th ed.1971). Section 287.080 was repealed in 1978, negating for all intents and purposes the relevance of the employer's affirmative defenses. *Hansen*, 375 S.W.3d at 209 n. 11. The effect was to create "a no-fault system of compensation for the employee" from an employer which rendered the subject of an employer's common law liability in negligence moot. *Gunnett*, 70 S.W.3d at 636.

However, the Act did not prohibit injured employees from pursuing common-law actions against negligent third-parties, ***including co-employees***. *Schumacher v. Leslie*, 360 Mo. 1238, 232 S.W.2d 913, 916 (1950) (holding Act does not negate right to pursue claims against negligent third parties, including co-employees, for injuries in the workplace); *Sylcox v. National Lead Co.*, 225 Mo.App. 543, 38 S.W.2d 497, 502 (1931) (holding that a co-employee is a "third party" under the Act amendable to actions at common law). The retained right to pursue third party claims intensified attention on the prospect of recovery from a negligent co-employee in addition to no-fault recovery from the employer under the Act.

It was in this environment that the "something more" test was announced in [*State ex rel.*] *Badami* [*v. Gaertner*], 630 S.W.2d [175,] 179–80 [(Mo.App.E.D.1982) (en banc)]. *Badami* held that "for an injured employee to charge a co-employee with actionable negligence, 'something more' than breach of one of the employer's [nondelegable] duties must be pled." *Hansen*, 375 S.W.3d at 214 (citing *Badami*, 630 S.W.2d at 180). In effect, *Badami* construed the Act to immunize all co-employee conduct except conduct beyond the scope of the employer's non-delegable duties. Thus, the "something more" test as ***originally*** announced in *Badami* was indistinguishable from the common law—with one exception. *Badami's* characterization of a co-employee's actionable negligence as "something more" focused attention on the nature and attributes of the co-employee's conduct, noting that "[t]he extent and nature ***of the additional charge*** can only be determined and sorted out on a case-by-case basis." *Badami*, 630 S.W.2d at 180–81 (emphasis added). In contrast, the common law focused attention on the employer's conduct, first requiring it to be determined whether a workplace injury was attributable to a breach of the employer's nondelegable duties. Post-*Badami* refinements of the "something more" test attached legal significance to this difference in focus.

For example, in *Craft v. Scaman*, 715 S.W.2d 531, 537 (Mo.App.E.D.1986), the Eastern District observed that the "something more" test required an ***affirmative*** act outside the scope of the employers responsibility before a co-employee could owe a personal duty of care to a fellow employee. (Emphasis added.) In *Tauchert v. Boatmen's Nat. Bank of St. Louis*, 849 S.W.2d 573, 574 (Mo. banc 1993), the Supreme Court observed that the "creation of a hazardous condition is not merely a breach of an employer's duty to provide a safe place to work" but an "***affirmative*** negligent act outside the scope of ... responsibility to provide a safe workplace." (Emphasis added.) *See also*, *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 672 (Mo. banc 1993), (holding that "an employee may sue a fellow employee for ***affirmative*** negligent acts outside the scope of an employer's responsibility to provide a safe workplace") (emphasis added); *Gunnett*, 70 S.W.3d at 641, (holding that a "personal duty will arise out of circumstances where the co-employee engages in an ***affirmative*** act, outside the scope of employer's nondelegable duties, ***directed at a worker, increasing the risk of injury***.") (emphasis added).

In *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 622 (Mo. banc 2002), the Supreme Court heightened the "something more" standard, requiring "***purposeful, affirmatively dangerous conduct***" to move a fellow employee outside the scope of an employer's responsibility to provide a safe workplace. (Emphasis added.) In *Garza v. Valley Crest Landscape Maintenance, Inc.*, 224 S.W.3d 61, 63 (Mo.App.E.D.2007), the Eastern District observed that *Taylor* superseded all earlier "something more" cases by holding that "mere allegations of negligence" are insufficient to establish "something more." (citing *Taylor*, 73 S.W.3d at 621–22). In *Nowlin ex rel. Carter v. Nichols*, 163 S.W.3d 575, 580 (Mo.App.W.D.2005) (*abrogated on other grounds by Burns v. Smith*, 214 S.W.3d 335, 338–39 (Mo. banc 2007)), we held that a co-employee's conduct was not "something more" because ***he acted within the scope of his employment*** and "***did not engage in inherently dangerous conduct purposefully directed*** at" his fellow employee. (Emphasis added.) In *Burns*, 214 S.W.3d at 338 the Supreme Court held that "the notion of an affirmatively negligent act—the 'something more'— can best be described as an ***affirmative act that creates additional danger beyond that normally faced in the job-specific environment***." (Emphasis added.)

The post-*Badami* refinements of the "something more" test operated to immunize co-employees from liability for ordinary negligence by narrowing recovery outside the exclusivity of the Act to outrageous or reckless conduct directed at a particular employee. *See, e.g.*, *Burns*, 214 S.W.3d at 338 ("[T]he notion of an 'affirmative negligent act' certainly includes the commission of an intentional tort...."); *Nowlin*, 163 S.W.3d at 580 (holding that "[a]n affirmative negligent act is ***not synonymous with any negligent act***, as the law requires a purposeful act 'directed' at a co-employee") (emphasis added). Post-*Badami* courts strived to define "bright lines" within which recovery from a co-employee for negligence would be precluded as a matter of law based solely on the nature and attributes of

13

the co-employee's conduct. Though not precisely stated in such terms, the "something more" test gravitated toward immunization of co-employees if their conduct loosely fell within the scope and course of their job duties. *See, e.g.*, *Nowlin*, 163 S.W.3d at 579 (holding that act of leaving bulldozer running was not "something more" because "use of the bulldozer was within the usual scope of [co-employee's] employment").

The post-*Badami* refinements of the "something more" test were fashioned at a time when section 287.800 required our courts to liberally construe the Act "with a view to the public welfare." Given this legislative directive, it is understandable that the "something more" test evolved to reduce the circumstances where both the employer and a co-employee could face liability for a workplace injury. However, as noted, section 287.800 was amended in 2005 to require "strict" in lieu of "liberal" construction of the Act. The judicial construct of "something more," which evolved over time to sweep most co-employee conduct into the exclusivity of the Act, was abrogated, restoring co-employee negligence claims *as existed at common law*. *Robinson*, 323 S.W.3d at 424–25.

### *The Refined "Something More" Test does not Align with the Common Law of Co–Employee Negligence*

We observed in *Hansen* that because the "something more" test as *originally* announced in *Badami* "did nothing more than restate the common law" of co-employee liability, the test was not necessarily rendered obsolete by the 2005 amendment of the Act. 375 S.W.3d at 215. Though technically accurate, our observation did not resolve whether the post-*Badami* refinements to the "something more" test continued to align with the common law. Our discussion herein plainly reveals they do not.

The "something more" requirement that a co-employee *only* and *always* owes an actionable duty in negligence if the co-employee commits a "purposeful, affirmative act directed at a fellow employee" has no common law origin. In fact, *Taylor* held as much, as it held "mere allegations of negligence" are insufficient to establish "something more." 73 S.W.3d at 621–22. Moreover, the "something more" requirement of an "affirmative" act is inconsistent with the common law and harkens back to efforts to distinguish between misfeasance and nonfeasance (acts and omissions)—an unwieldy lens for establishing whether a duty is owed that was abandoned by our Supreme Court for common law negligence claims. *Lambert v. Jones*, 339 Mo. 677, 98 S.W.2d 752, 757 (1936) (holding that determining whether a duty is owed based on whether a co-employee's conduct constitutes misfeasance or nonfeasance is "a fictitious distinction, which can only result in confusion," as acts of omission or commission can fall into either category). In short, the "something more" test's focus on the nature and attributes of a co-employee's conduct without first determining whether a workplace injury is attributable to a breach of an employer's nondelegable duties can impose an independent duty on a co-employee when the common law would not, and may

14

fail to impose an independent duty on a co-employee when the common law would. We offer several examples.

In *Gimmarro*, the foreman purposefully and affirmatively directed an employee to work in an area that was not protected by barriers from falling rock. 116 S.W.2d at 12–13. Yet our Supreme Court found only the employer to be responsible in negligence because the employer failed to insure that the workplace and work methods were safe. *Id.* The foreman's purposeful, affirmative order directing an employee to work in a dangerous area was attributable to the employer's breach of its nondelegable duties, and did not give rise to a personal duty of care owed by the foreman. In *Marshall*, a co-employee carelessly shook a compressor hose to remove kinks, unwittingly causing a fellow employee to trip over the hose. 296 S.W.2d at 2. Though the co-employee's acts were affirmative in nature, there was no indication that the acts were purposefully directed at the injured fellow employee. Yet, the employee was held to have breached a personal duty of care independent of the employer's nondelegable duties. Both of these cases, decided at common law, would likely have been decided differently under the "something more" test.

In *Logsdon v. Duncan*, 293 S.W.2d 944, 949–50 (Mo.1956), our Supreme Court held that a co-employee who threw a brick off of a house in connection with construction activities without regard for, or warning to, co-workers below owed a common law duty of care, an outcome that necessarily presupposed that the workplace injury was not chargeable to a breach of the employer's nondelegable duties. In contrast, and under nearly identical facts, the Eastern District in *Quinn v. Clayton Construction Co.*, Inc., 111 S.W.3d 428, 433–34 (Mo.App.E.D.2003) affirmed the dismissal of a petition alleging co-employee negligence where a co-employee carelessly threw a piece of iron from the roof of a construction site without regard for, or warning to, co-employees below because the conduct was "not an allegation of 'something more,'" as there was no allegation of "an affirmative act directed at [injured employee] that increased the risk of injury."

In *Graczak*, 202 S.W.2d at 776, an employee was injured when his hand was smashed by a hydraulic hammer being operated by a fellow employee. Under the facts and circumstances before it, the court concluded that:

> [T]he competency and method of work by [co-employee] is not questioned.... The steam hammer was in proper condition. Plaintiff's injury was not the result of any fault of plan, or construction, or defect, or lack of repair, or want of safety in defendant's place of work or the machinery used therefor, or in the manner ordinarily used. Plaintiff's injury is attributable to ... the negligence of a competent fellow employee in an operative detail of the work they were engaged in at the time.

15

*Id.* at 780. As such, the employer's nondelegable duties were not breached, and any actionable duty was owed by the co-employee, notwithstanding that the co-employee was merely negligent.

In *Groh v. Kohler*, 148 S.W.3d 11, 16 (Mo.App.W.D.2004) (*abrogated on other grounds by Burns*, 214 S.W.3d at 338–39), we applied the "something more" test and held that a petition asserting co-employee negligence should not have been dismissed when a supervisor directed an employee to use a machine "regardless of the machine's known dangerous spontaneous operation." We characterized the co-employee's conduct as "something more." *Id.* Yet, the machine in question was "defective," and "inherently dangerous." *Id.* Charging a co-employee with the personal duty to protect a fellow employee from the risk of operating a dangerous instrumentality of work violates a core maxim by ascribing to the employee the responsibility of performing the employer's nondelegable duties. Barring facts that might have indicated, for example, that the employer had taken all reasonable steps to remove the equipment from service or to order the equipment not to be used, the outcome in *Groh* is difficult to reconcile with the common law. *Kelso*, 85 S.W.2d at 534–36.

Our courts have acknowledged that the common law and the refined "something more" test are not aligned. In *Workman v. Vader*, 854 S.W.2d 560, 561 (Mo.App.S.D.1993), a co-employee carelessly discarded cardboard and packing material behind a counter, and a fellow employee later slipped and fell on the cardboard. The Southern District concluded that the act of throwing the cardboard on the floor did "not involve a general nondelegable duty of the employer," but instead the co-employee's common law duty to exercise reasonable care. *Id.* at 564. In *Gunnett*, 70 S.W.3d at 638–640, the Eastern District explored several "something more" cases, and acknowledged that the imposition of a common law duty in *Workman* could not be reconciled with the "something more" test because the co-employee's conduct in *Workman* was not purposeful, affirmative conduct directed at another employee. *Id.* at 640, n. 9.

We need not ascertain whether the outcomes reached in every "something more" case would be different had the common law been applied. For our purposes, it only matters that a different result can be, and in some cases has been, reached. The refined "something more" test can impose on a co-employee a duty in negligence when no duty would have been imposed at common law, and can fail to impose a duty when a duty would have been imposed at common law.

We are thus required to conclude that for workplace injuries occurring between the effective dates of the 2005 and 2012 amendments of the Act, the common law, and not the refined "something more" test, must be applied to determine whether a co-employee owes a duty of care in negligence. For workplace injuries within that time frame, it must first be determined whether a workplace injury is attributable to a breach of the employer's nondelegable duties. If yes, then a co-employee's negligent act or omission will not support a personal

16

duty of care in negligence as a matter of law, regardless whether the act or omission can be characterized as "something more." If no, then a co-employee's negligent act or omission may support an actionable duty of care in negligence, regardless whether the act or omission can be characterized as "something more." Determining whether a workplace injury is attributable to a breach of the employer's nondelegable duties is a question of fact. *Kelso*, 85 S.W.2d at 534–36; *Luallen*, 58 S.W.3d at 53.

In light of this conclusion, we decline to follow two Eastern District decisions which addressed workplace injuries subject to the 2005 amendment of the Act. Both cases relied on the refined "something more" test to determine whether a co-employee owed a duty in negligence. In *Amesquita v. Gilster–Mary Lee Corp.*, 408 S.W.3d 293, 303 (Mo.App.E.D.2013), the Eastern District affirmed the grant of a motion to dismiss a petition asserting a claim of co-employee negligence. The court held that "[i]n order for an employee to become personally liable to a co-employee for injuries suffered in the scope and course of employment, the employee must have done '***something more' beyond performing or failing to perform normal job duties***[.]" (emphasis added). The principle that the performance or failure to perform a job duty will never support a duty of care independent of the employer's nondelegable duties has no support at common law. Nearly every co-employee negligence case will involve the co-employee's performance, or failure to perform, a job duty. Applied literally, *Amesquita* will abrogate co-employee negligence at common law by requiring a co-employee to act outrageously, recklessly, or intentionally—and thus in a manner that is effectively outside the scope and course of his duties. The inquiry in *Amesquita* should have been whether the co-employee's performance of, or failure to perform, a job duty was attributable to the employer's failure to perform one or more of its nondelegable duties. *See Kelso*, 85 S.W.2d at 534–36. This would have required an assessment of whether the manner in which the employee performed or failed to perform his job duty was an ordinary risk or peril of the employer's work as to which the employer had the continuing duty to exercise ordinary care to prevent. *Kelso*, 85 S.W.2d at 534–35. Had the common law standard been applied, the same result may ultimately have been reached in *Amesquita*. We decline to follow *Amesquita*, however, not because we can discern that it reached the wrong result, but because it reached the result it did by employing an erroneous standard.

Similarly, we decline to follow *Carman*, where the Eastern District held that the trial court erred in failing to grant summary judgment in favor of a co-employee in a co-employee negligence case. 406 S.W.3d at 79. The court held as a matter of law that:

17

> [A] co-employee *owes* to a fellow employee *no common-law duty to exercise ordinary care and safety requiring the co-employee to refrain from operating a vehicle in a negligent manner* when driving in the course of his work. *As a matter of law, that responsibility is subsumed within an employer's nondelegable duty to provide a safe working environment*.

*Id.* (emphasis added). The absolute nature of this holding abrogates co-employee negligence in all motor vehicle cases, (and arguably in all cases involving the operation of any instrumentality of the employer's work). At common law, it is possible that a co-employee's operation of a motor vehicle (or other instrumentality of the work) will support a personal duty of care independent of the employer's nondelegable duties. *See, e.g.*, *Marshall*, 296 S.W.2d at 2. The existence of an independent co-employee duty depends on whether the co-employee's negligent operation is somehow attributable to a breach of the employer's nondelegable duties, a question of fact. *Kelso*, 85 S.W.2d at 534–36. The question is whether "the [employer] ... expose[d] the [employee], in the discharge of his duty, to perils and dangers against which the master [could have] guard[ed] by the exercise of reasonable care." *Moles*, 434 S.W.2d at 754. *See also*, *Kelso*, 85 S.W.2d at 536 (requiring determination of whether "the system of work adopted by the [employer] was an improper one" and thus unsafe). As discussed, *supra*, this assessment requires consideration of numerous relevant facts and circumstances unique to each case. Though the ultimate result in *Carman* might have been the same had the proper lens for determining co-employee duty been employed, our declination to follow *Carman* is not a function of its result, but is instead a function of the standard used to determine co-employee duty.

### The Sufficiency of the Allegations in Leeper's Amended Petition at Common Law

Applying the common law, we turn to Leeper's amended petition. Leeper alleges that it was Asmus's job duty to "ensure that the cable is tight as the 500–pound pipe is lifted, otherwise the 500–pound pipe will become unsecure and fail." Leeper alleges that Asmus was "personally negligent in operating the drilling rig in that he violated his job duty ... by lifting the 500–pound pipe without ensuring that the cable was tight." Leeper alleges that Asmus "was independently negligent ... in that he violated his job duty in operating the drilling rig winch by lifting the 500–pound pipe without ensuring that the cable was tight." Leeper alleges that "[a] 500–pound pipe falling from a Schramm drilling rig is not a normal risk of operating and working on a Schramm drilling rig and as a result, [Leeper] was subjected to a risk which was something more than the normal risk of operating and working on a Schramm drilling rig."

18

These facts, taken as true, establish a duty owed by Asmus to Leeper independent of the employer's nondelegable duties. The amended petition alleges that Asmus failed to perform his job as he had been instructed, and that as a result he made what was otherwise a safe workplace and safe instrumentality of work unsafe. Construed favorably to Leeper, these allegations support a conclusion that a safe drilling rig, safe methods for operation of the drilling rig, and a sufficiently trained operator of the drilling rig, were only made unsafe because Asmus failed to follow specific instructions imposed to insure safe operation of the drilling rig.

It will remain Leeper's obligation to prove that the employer performed all of its nondelegable duties such that a reasonably safe workplace, a safe instrumentality of work, and safe methods of work, became unsafe solely through the fault of Asmus, a determination that depends on the facts and circumstances of the workplace injury. Though it may be difficult in most cases to establish that a workplace injury is not attributable to breach of an employer's nondelegable duties, given the inherently factual nature of that determination, dismissal of a petition for failure to state a claim will be premature if the petition alleges facts which would support that conclusion.

Leeper's amended petition alleges sufficient facts to establish an independent duty of care owed by a co-employee at common law. . . .

*Leeper*, at *4-*17 (footnotes omitted).

At page 3, the majority opinion correctly recites how the record must be viewed in the light most favorable to Survivors. Given that standard of review, and the legal analysis in *Leeper*, reversal is required.

Unfortunately, without so much as a citation from page 8 through the end of the opinion, the majority opinion offers zero authority as to why *Leeper* is not controlling here.

Furthermore, the majority opinion is incorrect in its analysis of the duty that was owed to Parr by Co-Employee Respondents, with respect to their breach of federal regulations.

In *McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995), our Supreme Court noted that the driver of a tractor-trailer operated by Donald R. Farmer, owned by Bruce Transport and Leasing, and operated by Rumble Transport as the operator/lessee of the truck, had a duty which arose out of a breach of federal regulations. Our Supreme Court held:

19

The evidence here, viewed in a light most favorable to the plaintiff, indicates that Farmer had driven more than the time permitted by the [federal] Department of Transportation on the date of the collision. As a result, he may have been fatigued. The jury might infer that the fatigue affected Farmer's attention and reactions.

*Id.* at 878. This principle of law from the original opinion of our Supreme Court in 1995, has never been overruled. The principle of law recognized is that a breach of federal Department of Transportation regulations may, under an appropriate record and with appropriate evidence, result in a duty owed to persons injured by that breach.

In *McHaffie*, our Supreme Court further held that an employer, in this case Breeden Transportation, is liable under a theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the course and scope of the employment or agency. *Id.* at 875. The Supreme Court also described a second theory under which an employer may be held liable and that is "negligent entrustment." That theory requires proof that the entrustee (in this case Parr) is incompetent; the entrustor (Breeden Transportation) knew or had reason to know of Parr's incompetence; there was an entrustment of a chattel (in this case an 18-wheeled truck); and the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff, in this case Survivors. This theory permits imputation of negligence without requiring a finding that the employee was acting in the course or scope of employment. *Id.*

Finally, in the original *McHaffie* decision, our Supreme Court held that Missouri has recognized a cause of action for negligent hiring. Our Supreme Court held:

One element of negligent hiring is some form of misconduct by the employee that caused damages to the plaintiff. Like *respondeat superior* or negligent entrustment, this is a form of imputed liability because the employer's duty is dependent on and derivative of the employee's misconduct.

*Id.* at 826 (italics in original).

20

Without belaboring the point further, the evidence in *McHaffie* went further and described all the breaches of federal Department of Transportation regulations that may have been committed by defendants, thus creating the clear impression and conclusion that in Missouri, the violation of a federal Department of Transportation regulation creates a duty and breach of that duty, may create a cause of action. In this case, the duty is in existence in the period from 2005 to the 2012, and Survivors seek to utilize that duty as an appropriate remedy here. Cogdill and Buttry each had duties to provide a safe working environment for Parr; monitor his physical condition to determine if he was fit to drive a tractor-trailer; and to determine if Parr was in compliance with federal regulations.

Finally, as to Co-Employee Respondent Breeden, as admitted, he was president of Breeden Transportation. Breeden, as president of Breeden Transportation, was responsible for the acts of employees and agents, Cogdill and Buttry, in the course and scope of their employment or agency. *McHaffie*, 891 S.W.2d at 825. Breeden was responsible for hiring competent and capable employees to enforce regulations.

*McHaffie*, is still good law in our state. It has spawned a great deal of commentary, but has not been overruled. Our Supreme Court most recently observed the difficult issues presented by *McHaffie* in terms of instructing a jury, but given the opportunity to overrule *McHaffie* entirely, it chose not to do so. *See Coomer v. Kansas City Royals Baseball Corp.*, Nos. WD73984, WD74040, 2013 WL 150838, (Mo.App. W.D. Jan. 15, 2013).

The majority opinion couches the allegations against Co-Employee Respondents as to whether or not Co-Employee Respondents owed Parr a duty to protect him from his own decisions and conduct with respect to his health and employment as a driver of a commercial vehicle. However, that is not the record before us here. Parr is not filing the lawsuit seeking to

21

protect himself from his own decisions and conduct; Survivors are the plaintiffs in this litigation and they have, in fact, alleged sufficient pleadings and responses in the motion for summary judgment to not only create a material issue of fact, but to establish the legal duty and/or duties owed by Co-Employee Respondents to Survivors. As the majority opinion notes:

> In their Second Amended Petition, Plaintiffs' alleged that Defendant Co-Employees 'had a duty to provide a safe working environment to Kevin Parr, *to monitor the physical condition of Kevin Parr to determine whether he was fit to drive a tractor-trailer, and to determine whether Kevin Parr was in compliance with Federal Motor Carrier Safety Administration Regulations*.'

(Emphasis added).

Litigants in our courts every day describe or present evidence where persons who need to support their family, pursue jobs in order to complete that support; unfortunately, these very same people also encounter persons who do not take their job duties seriously and/or have no quarrel with overlooking the duties imposed upon them by law. Based upon the majority decision here, we will never know if that was the case.

If proven, Parr's death was caused or contributed to be caused by the failure of the Co-Employee Respondents to provide competent employees to evaluate and determine whether or not drivers of Breeden Transportation were medically able to operate commercial motor vehicles safely.

Due to this dissent, and my opinion that the majority opinion incorrectly declines to follow the opinion of the Western District in **Leeper**, I certify that this opinion is contrary to a previous decision of an appellate court of this state and pursuant to authority of Rule 83.03,[2] transfer this case to the Supreme Court of Missouri.

WILLIAM W. FRANCIS, JR., C.J., P.J. - Dissenting Opinion Author

---

[2] All rule references are to Missouri Court Rules (2014).